**A.B. CHANCE COMPANY,**
**Plaintiff–Appellant,**

v.

**RTE CORPORATION,**
**Defendant/Cross–Appellant.**

**Appeal Nos. 87–1584, 87–1591.**

United States Court of Appeals,
Federal Circuit.

Aug. 23, 1988.

Warren N. Williams, Schmidt, Johnson, Hovey & Williams, Kansas City, Mo., argued, for plaintiff-appellant. With him on the brief, was Jill D. Singer. Also on the brief, was James T. Ausmus, Ausmus, Ausmus & Beck, Centralia, Mo., of counsel.

James B. Blanchard, Willians Brinks Olds Hofer Gilson & Lione, Ltd., Chicago, Ill., argued, for defendant/cross-appellant. With him on the brief, was Richard A. Kaplan. Also on the brief, was James E. Lowe, Jr., RTE Corp., Brookfield, Wis., of counsel.

Before SMITH, BISSELL, and ARCHER, Circuit Judges.

ARCHER, Circuit Judge.

A.B. Chance Company (Chance) appeals from the July 23, 1987 judgment of the United States District Court for the Eastern District of Wisconsin granting RTE Corporation's (RTE) motion for summary judgment, vacating the court's Decision and Order of October 21, 1986 and holding U.S. Patent No. 4,083,028 ('028), assigned to Chance, invalid. RTE cross-appeals

from the denial of its motion requesting sanctions against Chance and an award of attorney fees. We reverse-in-part, vacate-in-part and remand.

### Background

The '028 patent, entitled "Pad–Mounted Double–Fused Vacuum Switchgear," issued on April 4, 1978, from an application filed December 15, 1975. The '028 patent was assigned to Chance, a company in the business of supplying equipment to the electrical utility industry.

In a letter dated October 17, 1983, Chance charged RTE with infringement of claims 1–13 of the '028 patent (all the claims in the patent) and offered a license. When RTE declined the license offer and refused to discontinue its infringing activities, Chance filed a complaint in the district court alleging infringement of claims 5, 7 and 11–13 only. RTE counterclaimed for a declaratory judgment that claims 1–13 were invalid under 35 U.S.C. §§ 102, 103 and 112 and alleged patent misuse, antitrust violations and laches. In subsequent pretrial submissions, RTE admitted infringement of claims 5, 7 and 11–13 and indicated that it was maintaining its assertion of invalidity based on section 102 and 103 defenses only. At the conclusion of the trial, the court issued a Decision and Order dated October 21, 1986 holding claims 1–13 not invalid and willfully infringed.

On January 27, 1987, RTE sought and was granted leave to conduct discovery with respect to "newly found evidence" regarding Chance's "on sale" activities. Thereafter, RTE filed a motion for an award of attorney fees and sanctions and for summary judgment, asserting that post-trial discovery established that Chance's representations regarding its sales activities were untrue, that Chance offered to sell the switchgear claimed in the '028 patent more than a year before the patent application was filed and that Chance violated its duty of candor to the United States Patent and Trademark Office (PTO) by failing to disclose material prior art consisting of Chance's own publications and commercial devices. Chance filed a "Motion for Leave to Submit Supplemental Findings of Fact and Conclusions of Law" as a rebuttal to RTE's motion. It argued that no "on sale" bar should arise because "the subject matter of the patent in suit was not completed and sufficiently tested prior to April of 1975."

Acting on RTE's motion, the court granted summary judgment, vacated its October 21, 1986 Decision and Order, and dismissed Chance's complaint. In its new Decision and Order dated July 23, 1987, the court found the '028 patent invalid under the "on sale" provisions of section 102(b) and, although stating that it was a "close case," the court denied RTE's request for attorney fees and sanctions.

The '028 patent is directed to pad-mounted, double-fused switchgear especially adapted for use in underground electrical distribution systems. The claimed switchgear includes a manually operable, oil-submerged vacuum switch element which is located in close proximity to a series-connected, oil-submerged current limiting fuse-expulsion fuse assembly. Claim 5, for example, is directed to a high voltage, double-fused switchgear apparatus comprising a tank containing a supply of a fluid dielectric material, a vacuum switch submerged in the fluid dielectric, a fuse assembly including a current limiting fuse and an oil expulsion fuse link within the fluid dielectric, and means for mounting the fuse assembly in relatively close proximity to the vacuum switch.

The idea of placing all of the switchgear components under oil in close proximity within a single compartment occurred to the inventors following discussions with a customer, Baltimore Gas & Electric (BG & E), in June of 1974. In September 1974, a Chance sales representative learned of the BG & E discussions and requested information and drawings relating to the switchgear to present to another customer, Gulf States Utilities (GSU). On December 6, 1974, Chance issued a written quotation to GSU for pad-mounted switchgear equipment. The quotation (No. 1MRM120674) contained a description of the switchgear

and set forth the quantity, catalog number (CLI–PW32–01), price, delivery and payment terms, and warranties and limitations. That same day, GSU issued an internal purchase requisition for thirteen of the units. On December 11, 1974, a GSU employee telephoned Chance's sales representative and placed a verbal order for thirteen switchgear units. The order was confirmed in a written purchase order which GSU submitted to Chance on December 16, 1974. Chance acknowledged the purchase order on January 20, 1975.

Despite these transactions, in its application for the '028 patent and in its discovery responses, Chance stated that the first offer for sale of the claimed invention occurred on December 16, 1974 and that the first sale occurred on or about January 8, 1975. It is undisputed that Chance did not advise the examiner during prosecution of the '028 patent of the offer to GSU which occurred prior to the § 102(b) bar date of December 15, 1974.

It is also undisputed that Chance did not advise the examiner of an under oil vacuum switchgear known as the PSI device which it commercialized in 1973 or of several printed publications describing a Chance transformer protection system known as the PAD–MATE system. Both the PSI device and the PAD–MATE system included some features of the claimed switchgear.

The Chance PSI device, a switchgear unit sold to Public Service of Indiana in 1973, included under oil vacuum switches which were electrically connected in series with air insulated full range current limiting fuses housed in a dry well. The PSI device did not have a partial range current limiting fuse and an oil expulsion fuse making up a withdrawable assembly under oil, as claimed in the '028 patent.[1]

The PAD–MATE publications included G.D. Allen, "The Chance Protection System For Pad Mounted Transformers;" V. Klemenok, "Overcurrent Protection For Pad–

Mounted Transformers And The Chance Transformer Protection System," A.B. Chance Co. Bulletin 16–7401; and V. Klemenok, "Overcurrent Protection for RUD Transformers," IEEE Conference Record, 1974 Underground Transmission and Distribution Conference. These publications described a transformer protection system in which an RTE Bay–O–Net expulsion fuse was electrically connected to an oil immersible current limiting fuse.

*Issues*

1. Whether the district court erred in concluding on motion for summary judgment that the '028 patent was invalid because the invention claimed therein was on sale within the meaning of section 102(b) more than one year prior to the filing date of the '028 patent application.

2. Whether the district court erred in denying RTE's motion for sanctions and an award of attorney fees in view of Chance's conduct before the PTO and the court.

OPINION

■ A motion for summary judgment is properly granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). The moving party bears the burden of demonstrating the absence of any genuine issue of material fact. *SRI Int'l v. Matsushita Elec. Corp.,* 775 F.2d 1107, 1116, 227 USPQ 577, 581 (Fed.Cir.1985). In considering the motion, the district court must view the

---

**1.** A full range current limiting fuse is one which operates over the full range of currents from its minimum interrupting capability to its maximum interrupting capability. In the claimed assembly, the oil expulsion fuse operates for low current applications and the partial range current limiting fuse operates for high currents.

evidence in the light most favorable to the nonmovant and must draw all reasonable inferences in the nonmovant's favor. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). However, the nonmovant must do more than merely present some evidence on an issue it asserts is disputed. Sufficient evidence for a jury to return a verdict in favor of the nonmovant must be forthcoming. *Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1560 (Fed.Cir.1988). On appeal, this court must determine for itself whether the standards for summary judgment have been met; it is not bound by the district court's ruling that there were no material factual disputes requiring resolution. *Armco, Inc. v. Cyclops Corp.*, 791 F.2d 147, 149, 229 USPQ 721, 723 (Fed.Cir.1986).

### A. The "On Sale" Issue

██ An invention which was offered for sale in the United States more than one year before the filing date of the patent application is subject to the statutory bar of 35 U.S.C. § 102(b). A single offer to sell is enough to bar patentability whether or not the offer is accepted. *In re Caveney*, 761 F.2d 671, 676, 226 USPQ 1, 4 (Fed.Cir. 1985). However, all of the circumstances surrounding the offer to sell, including the stage of development of the invention, must be considered. *UMC Elecs. Co. v. United States*, 816 F.2d 647, 656, 2 USPQ2d 1465, 1471 (Fed.Cir.1987), *cert. denied*, — U.S. —, 108 S.Ct. 748, 98 L.Ed.2d 761 (1988). "If the inventor had merely a conception or was working towards development of that conception, it can be said there [was not] ... any 'invention' which could [have been] placed on sale," at the time of the offer. *UMC*, 816 F.2d at 657, 2 USPQ2d at 1472.

██ RTE contends that in view of Chance's prior art publications, tests and designs, and of Chance's commercialization of the PSI device, the district court properly concluded that the claimed switchgear

was much more than a "mere concept" at the time of the GSU sales offer and that the section 102(b) bar was applicable. It argues that Chance's activities after the GSU offer were merely attempts to commercially perfect the switchgear by engineering modifications and testing related to commercial production. It further argues that the O-ring seal design was successfully tested prior to the offer and that the "fish tank" test, encapsulant formulation and "wisdom in the art" relied upon by Chance were irrelevant in that they were directed solely to features not claimed in the '028 patent.

Chance, on the other hand, contends that the district court misapplied *UMC* in concluding that Chance's offer to GSU was a section 102(b) bar. It argues that, when properly analyzed, the offer to GSU was of a concept only because critical components of the claimed invention had not been developed, no embodiment had been built, and the inventors did not know and could not have known whether their invention would work. Chance also contends that the district court made and relied upon clearly erroneous factual findings as to the content of the prior art and the nature of the test evidence.

A review of the record convinces us that there are genuine issues of material fact in dispute which render the district court's grant of summary judgment improper.

The district court found that the purpose of the "fish tank tests" was to determine if "the oil switch could be placed above the expulsion fuse instead of below it—a feature not recited in the '028 patent claims."[2] However, although Mr. Haubein, one of the inventors, testified that this orientation of the switch was under consideration, he added that the reason he wanted to run the test was to dispel concerns he had about "what happened to the gas bubble coming out of the bottom of the bayonet." The test report itself stated that the object was

---

**2.** In the "fish tank test," an expulsion fuse along with a simulation of a coaxial current limiting fuse were mounted under oil in a 55 gallon glass fish tank. Successive fuses were exposed to fault currents causing activation of the expulsion links. Observations were recorded of the degree of contamination of the oil and the action of the gases generated by the fuses.

"to determine if fuse puts off excessive gasses [sic] under oil when it interrupts."

Chance also presented deposition testimony and exhibits which indicated that the original fuse well and contacts did not work and had to be redesigned after the critical date. An intra-company pad-mounted switchgear status report dated February 11, 1975 (plaintiff's deposition exhibit 550) flagged the fuse wells as a problem area and stated that "[s]pecial current carrying connector springs are still in design testing." A subsequent status report dated March 4, 1975 (plaintiff's deposition exhibit 546) indicated that redesign of the upper contact casting of the fuse well was necessary.

Finally, the teachings of the prior art were the subject of dispute. The court, in concluding that the '028 switchgear was more than a mere concept in December 1974, relied in part on a finding that Chance's PSI device "incorporated all the elements of the '028 switchgear except the expulsion fuse." Chance, however, presented the testimony of an independent expert, Dr. Barkan, who said that he found it "remarkable" that Chance "succeeded in locating a vacuum interrupter in such close proximity to an explusion fuse," and that numerous literature references taught away from such a combination. With respect to the PAD–MATE publications, Chance presented testimony by Mr. Popeck, a Chance engineer, that the transformer protection system described therein did not contain a switch of the type required in the claimed switchgear and that an attempt to use the RTE Bay-O-Net oil expulsion fuse as a switch would pose an extreme hazard to a lineman. It cited an RTE publication (defendant's exhibit T–47) which warned against such use. According to Chance, this prior art did not suggest the claimed combination and did not obviate the need for some or all of the tests performed after the critical date. Chance presented testimony that further testing, including "interrupt under hot oil, thermal cycle/leaking, mechanical strength of mounting, and broken element under hot oil" was necessary to determine whether the claimed apparatus would work for its intended purpose. It also cited a January 31, 1975 internal memorandum from Mr. Edwards (plaintiff's deposition exhibit 548), a Chance employee, which stated that these tests were "needed before release to market."

In view of the above, we are persuaded that inferences could be drawn contrary to those of the trial court. *United States v. Diebold, Inc.*, 369 U.S. at 655, 82 S.Ct. at 994. Chance came forward with sufficient evidence to demonstrate the existence of a "genuine issue" of material fact for trial, which was all it was required to do in order to successfully oppose the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248–49, 106 S.Ct. at 2510–11. Accordingly, we reverse the district court's grant of summary judgment and remand for trial on the section 102(b) issue.

### B. *The Attorney Fees and Sanctions Issue*

RTE argues that the district court's failure to consider evidence of Chance's inequitable conduct before the PTO was an error of law. It contends that there was "uncontroverted" evidence of non-disclosure by Chance of its offers of sale and information regarding its own prior art devices and publications. On this issue, the district court stated only that "[w]hile this is a close case for the imposition of sanctions against Chance, I decline to order them because I do not believe it engaged in, as RTE states, an 'egregious pattern of conduct.' " The court's Decision and Order of July 23, 1987 invalidated the '028 patent only on the basis of an on-sale bar, and there was no discussion of the asserted inequitable conduct. In the absence of any findings or discussion by the court regarding the lack of disclosure of the offers of sale and the prior art, we must assume that the alleged inequitable conduct was not considered by the court in deciding not to impose sanctions.

Inequitable conduct is a separate defense to patent infringement and, either alone or in conjunction with trial conduct, may constitute the basis for an award of attorney fees under 35 U.S.C. § 285 (1982). We

agree that, in its consideration of sanctions, the district court erred when it did not make a determination of whether or not Chance had engaged in inequitable conduct before the PTO. Accordingly, we vacate the district court's denial of the request for attorney fees and sanctions and remand for reconsideration of these issues.

### Costs

Each party shall bear its own costs.

REVERSED–IN–PART, VACATED–IN–PART AND REMANDED.