The B.F. GOODRICH COMPANY,
Plaintiff,

v.

AIRCRAFT BRAKING SYSTEMS CORP.
and Allied–Signal Incorporated,
Defendants.

Civ. A. No. 91–48/91–515–SLR.

United States District Court,
D. Delaware.

May 18, 1993.

Donald F. Parsons, Jr., Morris, Nichols, Arsht & Tunnell, Wilmington, DE (Harry J. Roper, George S. Bosy, and William P. Oberhardt, Roper & Quigg, Chicago, IL, of counsel), for plaintiff.

Bruce M. Stargatt, and Josy W. Ingersoll, Young, Conaway, Stargatt & Taylor, Wilmington, DE (Kenneth E. Payne, Thomas W. Winland, James W. Edmondson, and Gerson S. Panitch, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, DC, of counsel), for defendants.

## MEMORANDUM OPINION

SUE L. ROBINSON, District Judge.

### I. INTRODUCTION

Plaintiff, The B.F. Goodrich Company ("BFG"), originally filed separate actions against defendants, Aircraft Braking Systems Corp. ("ABS") and Allied–Signal Incorporated ("Allied"), claiming that the defendants infringed two United States patents relating to aircraft brakes. The two suits were subsequently consolidated. BFG charges defendants with infringing United States Patent Nos. 4,613,017 ('017) and 4,742,895 ('895) (the "Bok patents", named after their inventor, Lowell Bok). The patents-in-suit disclose a new brake assembly and overhaul technique commonly referred to as "EDL" or extended disk life.

Presently before this Court is Allied's motion for summary judgment pursuant to Fed. R.Civ.P. 56, in which it claims that the Bok patents are invalid. In support of its argument, Allied relies on section 102(b) of Title 35, United States Code, which bars issuance of a patent if the invention was either on sale or described in a printed publication more than one year prior to filing a patent application. Allied contends that the EDL brakes were both on sale and described in a printed publication more than one year prior to filing the application.[1] Upon review of the parties' briefs and presentation at oral argument, the Court will deny Allied's motion for summary judgment.

### II. FACTUAL BACKGROUND

For years, most aircraft brakes have been manufactured with a stack of disks (multiple disk brakes) which include a number of rotor and stator disks ("rotors" and "stators"). The traditional design includes rotors which are connected to the aircraft wheels and rotate with them, and stators which are stationary and attached to a brake frame which in turn is attached to the aircraft landing

---

1. The first of the two Bok patents at issue was filed on July 2, 1984. For the purposes of summary judgment, this date will be deemed the critical date for both BFG patents.

gear. The rotors and stators are positioned in an alternating relationship and are slidable along separate keyways so they can be pressed against one another by brake pistons. Immediately after touchdown on a runway, the brakes are applied, and the brake pistons push the disks against one another. The friction between the rotors and stators slows the wheels and, hence, the airplane. Wear of the friction surfaces occurs on each landing. This wear occurs on both rotor and stator surfaces, and the portion of each disk that wears away may be referred to as the "wear portion" or "wear thickness."

In recent years, aircraft brake manufacturers have found it advantageous to make disks out of carbon rather than steel. While the use of carbon does offer advantages such as lighter weight, it is also expensive and difficult to fabricate. As a consequence, brake designers have attempted for many years to increase the life of the carbon disks, while at the same time lowering the cost of the disks and reducing the weight of the brake.

Prior to the Bok invention, multiple disk carbon brakes were uniformly designed so that each rotor and stator had the same wear thickness and weight. Eventually, these disks wear out and must be replaced. At the time of replacement in a traditional carbon brake, all of the disks are worn out and require replacement or "overhaul."

In contrast to the traditional brake design, the EDL brakes designed by Mr. Bok are assembled with two groups of disks having different wear thicknesses and, therefore, different weights. This design differs from the prior art in which the rotors and stators shared a uniform wear and thickness. Another distinguishing feature of the EDL brakes concerns the overhaul technique in which only half of the disks (either the rotors or the stators), rather than all, are replaced. Thus, the brake never, either before or after overhaul, has disks with uniform wear thicknesses.

## III. DISCUSSION

In moving for summary judgment, Allied presents two arguments that the Bok patents are invalid pursuant to 35 U.S.C. § 102(b): (1) the invention was on sale more than one year before the July 2, 1984 patent application date, and (2) the invention was described in printed publications more than one year before the July 2, 1984 patent application date.

### A. Summary Judgment Standard

It is well settled that summary judgment is as appropriate in patent cases as in any other type of case. *Johnston v. Ivac Corp.*, 885 F.2d 1574, 1576–77 (Fed.Cir.1989). The Federal Circuit has affirmed numerous decisions granting summary judgment for patent invalidity, particularly under 35 U.S.C. § 102(b).[2] In the case at bar, the patents at issue are presumed valid and defendant bears the burden of establishing invalidity by clear and convincing evidence. 35 U.S.C. § 282; *Intel Corp. v. United States Int'l Trade Commission*, 946 F.2d 821, 829 (Fed.Cir.1991).

Federal Rule of Civil Procedure 56(c) provides that a party is entitled to a summary judgment where "the pleadings, depositions, answers to interrogatories and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and the Court must view any factual inferences drawn from the evidence in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The district court should only decide the case as a matter of law where the facts are undisputed or "the evidence is so one-sided that it leaves no room for any reasonable differences of opinion as to any material

---

2. *See, e.g., Cable Electronic Products, Inc. v. Genmark, Inc.*, 770 F.2d 1015 (Fed.Cir.1985); *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831 (Fed.Cir.1984); *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144 (Fed.Cir.1983), *cert. denied*, 474 U.S. 825, 106 S.Ct. 83, 88 L.Ed.2d 68 (1985); *Chore–Time Equip., Inc. v. Cumberland Corp.*, 713 F.2d 774 (Fed.Cir.1983).

fact." *Id.* However, the mere existence of some evidence in support of the non-moving party will not be sufficient; there must be enough evidence to enable a jury to reasonably find for the non-moving party. *Id.* In this case, the facts are not in dispute; rather, the application of the facts to the law is controverted.

### B. On–Sale

█ Section 102(b) of Title 35, United States Code, provides in pertinent part as follows:

A person shall be entitled to a patent unless—

(b) the invention was patented or described in a printed publication in this or a foreign country or in a public use or on sale in this country more than one year prior to the date of the application for patent in the United States....

The date of the patent application is referred to as the "critical date." If a claimed invention is "on sale" more than one year prior to the critical date, the patent is invalid as a matter of law.

The following sets forth several of the well-recognized policy considerations underlying section 102(b) which are to be considered along with the surrounding circumstances:

First, there is a policy against removing inventions from the public which the public has justifiably come to believe are freely available to all as a consequence of prolonged sales activity. Next, there is a policy favoring prompt and widespread disclosure of new inventions to the public. The inventor is forced to file promptly or risk possible forfeiture of his invention [patent] rights due to prior sales. A third policy is to prevent the inventor from commercially exploiting the exclusivity of his invention substantially beyond the statutorily authorized 17–year period. The on-sale bar forces the inventor to choose between seeking patent protection promptly following sales activity or taking his chances with his competitors without the benefit of patent protection. The fourth and final identifiable policy is to give the inventor a reasonable amount of time following sales activity (set by statute as 1 year) to determine whether a patent is a worthwhile investment. This benefits the public because it tends to minimize the filing of inventions [sic] of only marginal public interest.

*General Electric Co. v. United States,* 654 F.2d 55, 61–64, 228 Ct.Cl. 192 (1981) (*quoted in UMC Electronics,* 816 F.2d at 652).

█ The party asserting patent invalidity pursuant to the 102(b) on-sale provision bears the burden of proof and must satisfy the following two part test:

[T]he challenger has the burden of proving that there was a definite sale or offer to sell more than one year before the application for the subject patent, and that the subject matter of the sale or offer to sell fully anticipated the claimed invention or would have rendered the claimed invention obvious by its addition to the prior art.

*UMC Electronics Co. v. United States,* 816 F.2d 647, 656 (Fed.Cir.1987). In order to prevail, then, Allied must prove by clear and convincing evidence that a definite sale or offer for sale occurred in violation of section 102(b). As noted above, section 102(b) applies not only to actual sales, but also to offers to sell. *King Instrument Corp. v. Otari Corp.,* 767 F.2d 853, 860 (Fed.Cir.1985), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1197, 89 L.Ed.2d 312 (1986).

In its motion for summary judgment, Allied claims that BFG made several commercial sales proposals and presentations more than one year prior to the critical date. It is only necessary for Allied to prove that one of these proposals or presentations constitutes an offer for sale pursuant to section 102(b) since a single sale or offer for sale of an invention is all that is required to raise the bar to patentability of section 102(b). *King Instrument,* 767 F.2d at 860. In the following section, the Court will address whether any of the proposals constitute offers to sell so as to satisfy the on-sale bar provision.

BFG argues that none of the proposals at issue can be classified as "offers to sell." The plaintiff focuses on the fact that, at the time of the proposals, the EDL brakes were "mere concepts" and not fully developed and

that, therefore, they were not reduced to practice.

The Federal Circuit has addressed the issue of whether a product needs to be reduced to practice in order to be "on sale." In *UMC Electronics*, the Federal Circuit determined that reduction to practice of a claimed invention should not be an absolute requirement of the on-sale bar. *Id.* at 656. The court went on to note in pertinent part as follows:

> We do not reject "reduction to practice" as an important analytical tool in an on-sale analysis. A holding that there has or has not been a reduction to practice of the claimed invention before the critical date may well determine whether the claimed invention was in fact the subject of the sale or offer to sell or whether a sale was primarily for an experimental purpose. A holding that there is a reduction to practice of the claimed invention "may, of course, lighten the burden of the party asserting the bar...." Thus, we simply say here that the on-sale bar does not necessarily turn on whether there was or was not a reduction to practice of the claimed invention. All of the circumstances surrounding the sale or offer to sell, including the stage of development of the invention and the nature of the invention, must be considered and weighed against the policies underlying section 102(b).

*Id.*, 816 F.2d at 657.

Although an invention need not be reduced to practice in order for the section 102 proscription to apply, it apparently must be beyond the stage of a "mere concept." In *A.B. Chance Company v. RTE Corporation*, 854 F.2d 1307 (Fed.Cir.1988), the Federal Circuit denied entry of summary judgment, finding that material issues of fact existed as to whether a patent on a "Pad–Mounted Double–Fuse Vacuum Switchgear" was

barred. On appeal, the patent holder argued that its offer for sale was "of a concept only because critical components of the claimed invention had not been developed, no embodiment had been built, and the inventors did not know and could not have known whether their invention would work." *Id.* at 1311. The patent holder presented testimony that further testing was necessary to determine whether the claimed apparatus would work for its intended purpose and that such tests were necessary before release to market. *Id.* at 1312. In light of the above, the Federal Circuit found that inferences could be drawn in the patent holder's favor and that they created a genuine issue of fact. Thus, while the Federal Circuit in *UMC Electronics* concluded that a product need not be reduced to practice for the on-sale bar to apply, it subsequently found in *A.B. Chance* that there must be something more than a mere concept being commercialized in order to invoke the on-sale bar. It is the Court's task to determine where, on this factual continuum, plaintiff's admittedly commercialized offers to sell most appropriately fall.

### 1. Boeing Proposal

■ In December 1981, BFG submitted a proposal to sell the EDL disk brakes to Boeing. Defendant, in its motion for summary judgment, contends that the section 102(b) proscription applies to this offer. Plaintiff, however, argues that at the time of this proposal, the EDL disk brake was a "mere conception" which had not yet been embodied in any tangible form. According to BFG, the inventor, Mr. Bok, had just conceived of the idea approximately a month before the proposal. (D.I. 216 at 17) In support of its argument, BFG primarily focuses on an affidavit prepared by the inventor, Mr. Bok, in which he attests to the fact that in 1981, he did not know whether his invention would work.[3] (D.I. 217 at B19–

---

3. Defendant claims that little weight should be accorded to the inventor's affidavit in light of *Paragon Podiatry Laboratory, Inc. v. KLM Laboratories, Inc.*, 984 F.2d 1182 (Fed.Cir.1993). This case involved a similar situation in which a patent holder had attacked the validity of an inventor's affidavit. The Federal Circuit, however, rejected the patent holder's argument and held that the "inventor's affidavit averring that the

sales were experimental [was] sufficient, in itself, to raise a genuine issue of **material fact**," *id.* at 1186 (emphasis in original), and noted in pertinent part as follows:

> The fact that an inventor had an intent to experiment in making the sale need not be overcome or disputed to invoke the statutory bar. Such intent is merely a fact to be taken into account in resolving the ultimate legal

B37) The inventor's affidavit[4] supports BFG's arguments that, at the time of the Boeing proposal, the EDL disk brakes were a "mere concept" and that further experimentation or testing was necessary. BFG contends that in December 1981, it amended its proposal to Boeing to include the possibility that the EDL concept might be useful and that Mr. Bok had conceived of his idea for EDL disk brakes only one month prior to this proposal. According to BFG, if selected, it would have "attempted to develop the EDL concept. But in the event that the effort proved unsuccessful, BFG would have relied on a traditional brake design." (D.I. 216 at 11)

In *A.B. Chance*, the Federal Circuit, facing a similar issue, held that, at the time of the relevant offer, there existed only a concept, because the "components of the claimed invention had not been developed, no embodiment had been built, and the inventors did not know and could not have known whether their invention would work." 854 F.2d at 1311. The court, in concluding that the stage of the invention should be classified as a concept, refused to apply the on-sale bar, despite the fact that Chance, the patent holder, (1) submitted a detailed quotation to a potential purchaser and (2) failed to indicate anywhere in this quotation that the product was only at the stage of a mere concept. Specifically, Chance's quotation "contained a description of the switchgear and set forth the quantity, catalog number, price, delivery and payment terms, and warranties and limitations." *Id.* at 1309.

In the case at bar, BFG's revised proposal to Boeing dated December 11, 1981 also contained price quotations and a detailed description of the invention.[5] Neither the proposal nor the revised proposals informed Boeing that the invention existed only as a mere concept. However, since (1) critical components of the claimed invention allegedly had not been developed, (2) no embodiment had been built, and (3) Mr. Bok allegedly did not know and allegedly could not have known whether his invention would work, the Court will follow the holding in *A.B. Chance* and find that, in 1981, Mr. Bok's invention existed only as a concept and, therefore, that the invention was not on-sale to Boeing.

question. Moreover, as a factor in the ultimate conclusion, we have held, "[T]he expression by an inventor of his subjective intent to experiment, particularly after institution of litigation, is generally of minimal value."... Further, we have held that the assertion of experimental sales, **at a minimum**, requires that customers must be made aware of the experimentation. *Id.* at 1186 (emphasis in original) (citations omitted). Although the rationale in *Paragon Podiatry* is convincing, the case is inapposite because it involves an "experimental use" situation, unlike the present case which concerns the alleged commercialization of an invention.

4. The parties dispute whether Mr. Bok's affidavit was corroborated. In viewing the facts in the light most favorable to the plaintiff, the Court will assume that Mr. Bok's affidavit is credible.

5. The revised proposal provides in pertinent part as follows:

Our *Revised Primary* Technical Proposal offers a weight savings of 648.4 lbs. per aircraft (an additional 43.6 lbs. for both the Boeing Company and the airline user over our original proposal). This revised proposal also allows the addition of 5.45 to the worn brake heat sink offering improved temperature control. Although an intermediate restacking of the heat sink would be required at 2000 landing intervals, the new and refurbished heat sink parts would remain capable of 4000 landings. During the restacking of the heat sinks, no refurbishment of half worn heat sink parts would be required and a single width clip would cover all rotor/stator requirements regardless of new or worn condition. Restacking at 2000 landings also allows "0" ring inspection. For further clarification of our *Revised Primary Proposal*, refer to Attachments "A", and "A–1."

In addition to the above *Primary Revision*, we offer an *Alternate Revision* which allows the addition of 10.9 lbs. to the worn brake heat sink. This alternate is offered should worn brake temperature become a service or design problem. This design offers the Boeing Company and the airline user a weight savings of 604.8 lbs. per aircraft. This design also requires a restacking of the heat sink at 2000 landing intervals.

Again, the new and refurbished heat sink parts would remain capable of 4000 landings. During the restacking of the heat sinks, no refurbishment of half worn heat sink parts would be required and a single width clip would cover all rotor/stator requirements regardless of new or worn condition. Again, restacking at 2000 landings allows "0" ring inspection. For further clarification of our *Revised Alternate* Proposal, refer to Attachments "B", and "B–1."

(D.I. 172 at 908–909)

## 2. Airbus Proposal

In January 1983, BFG made a presentation in Toulouse, France in connection with the Airbus A310–300 aircraft. In about June 1983, BFG provided a written proposal on the same subject for the A310–300. Also in June 1983, BFG made a presentation to Swissair, an Airbus customer in Switzerland.

It is undisputed that by 1983, BFG's EDL disk brake was beyond a "mere concept." Plaintiff, nonetheless, argues that the on-sale bar is inapplicable because (1) the product needed further testing and development and (2) the product was not "on sale" in the United States.

### a. Further Testing and Development

In contrast to the time of the Boeing proposal in 1981, it appears as though there existed an embodiment of the invention by 1983. The Court will now consider whether this stage of development qualified for the on-sale bar.

■ As noted above, the section 102(b) bar can potentially apply to an invention even if it is not reduced to practice and does not constitute a complete embodiment of the invention, particularly in those instances where policy concerns arise. *UMC Electronics,* 816 F.2d at 656–57. In *UMC Electronics,* the court weighed all of the surrounding circumstances and emphasized the fact that the patent holder, UMC, had bid on a government contract and that it had admitted that this bid was for profit and not proposed in order to conduct experiments. *Id.* at 657. The court found that such activities constituted at least a *prima facie* case of an attempt to commercialize the invention.

The court rejected UMC's "purely technical objection [to the *prima facie* case] that no complete embodiment of the invention existed at the time of the sale." *Id.* at 657. The court determined that because UMC's actions were admittedly for commercial rather than experimental purposes, it would not

take into consideration UMC's assertions that the product needed further "development." *Id.* Significantly, the court noted that UMC's argument that the product was in development may have weighed in its favor "if UMC had sought by convincing evidence to prove that the primary purpose of the sale was for experimental work. However, the contract was not a research and development contract, and UMC admits that the offer was made for profit...." *Id.*

■ Similarly, in the present case, it is undisputed that BFG's proposal to Airbus was commercially motivated. Therefore, in considering the surrounding circumstances of these proposals, the Court will not apportion any weight to BFG's contention that, at the time of the proposals, the EDL brake disks were not fully developed. Rather, review of the detailed Airbus proposal indicates that there is sufficient evidence to support a *prima facie* case that the on-sale bar applies.

The Court finds that this *prima facie* case can not be overcome by other surrounding circumstances. To uphold the validity of the patents at issue would be to expand the one year grace period in contravention of the policies underlying section 102(b).

### b. On–Sale in the United States

BFG also argues that the on-sale bar cannot apply to the Airbus proposal or the Swissair presentation because neither was offered "in this country" as required by section 102(b).[6] It is undisputed that the Airbus proposal was submitted in Toulouse, France and that BFG's presentation to Swissair occurred in Switzerland. Allied, nonetheless, urges the Court to consider the activities which occurred in the United States relating to the Airbus proposal and Swissair presentation, in light of the following two cases.

In *Robbins Co. v. Lawrence Mfg. Co.,* 482 F.2d 426 (9th Cir.1973), the Ninth Circuit held that a "product is 'on sale' in the United

---

6. Section 102 clearly distinguishes between activities in this country or in a foreign country. The relevant provision provides in pertinent part as follows:

A person shall be entitled to a patent unless—
(b) the invention was patented or described in a printed publication **in this or a foreign**

country or in a public use or on sale **in this country** more than one year prior to the date of the application for patent in the United States....

35 U.S.C. § 102(b) (emphasis added).

States, within the proscription of the statute, if substantial activity prefatory to a sale occurs in the United States." *Id.* at 434. The Ninth Circuit concluded that an offer to a Tasmanian company occurred in the United States for purposes of the statute, specifically holding as follows:

> Whether or not such a sale is consummated in a foreign country, we hold that the product is "on sale" in the United States, within the proscription of the statute, if substantial activity prefatory to a sale occurs in the United States. An offer for sale, made in this country is sufficient prefatory activity occurring here, to bring the matter within the statute.

*Id.* at 434.

The rationale in *Robbins* was subsequently adopted by another court in *Synair Corp. v. American Industrial Tire, Inc.,* 223 USPQ 1021 (S.D.Tex.1983). This court held that the "substantial activity" test enunciated in *Robbins* refers to sales activity, rather than to product development. *Id.* at 1022. The court in *Synair* concluded that since "all the discussions leading to the eventual sale took place in Canada," there was not a "prior sale" in the United States. *Id.*

■ Neither the *Robbins* nor *Synair* cases address the present situation in which the offer is made abroad, but substantial other activities relating to the offer occur in the United States. (*See* D.I. 254, Exhibit B) For instance, it is undisputed that a full scale prototype of the invention was built and tested in BFG's facilities in the United States and that the extensive commercial, technical, and financial proposal volumes comprising hundreds of pages were generated in and sent from BFG's offices in Troy, Ohio. Communications occurred between both Airbus

and Swissair with BFG in the United States. Also, BFG fielded customer questions from its United States offices, and Airbus's original request for proposal was communicated to BFG in Ohio. (D.I. 232, Tab 39)

Pursuant to the holding in *Synair,* the Court will not consider the product development activities which occurred in Troy, Ohio. The remaining issue concerns whether the sales activities associated with the Airbus proposal and Swissair presentation were "substantial" enough to invoke the section 102(b) bar. For the following reasons, the Court will find that these activities do not rise to the level of "substantial" and, therefore, do not satisfy the "on sale in this country" provision.

First, the relevant sales activities listed above (i.e. telephone communications and preparation of proposals) presumably are performed by any company engaging in foreign commerce. To find that this activity constitutes "substantial prefatory activity" would mean that virtually every offer made in a foreign country could satisfy the on-sale provision. Such a finding would render the relevant "in this country" language superfluous.

Unlike this standard sales activity, an actual offer in the United States represents something much more substantial. The *Robbins* court found that it was the "offer" made in the United States which constituted a substantial prefatory activity. The court did not at any point consider the more standard sales activities as qualifying as "substantial prefatory activity." Rather, the court found that even though the sale was later consummated abroad, the offer in the United States was, in and of itself, substantial so as to invoke the statute.[7]

---

7. The court in *Synair* seemed to indicate that discussions in a particular location may be enough to satisfy the "substantial prefatory activity" requirement. There is no evidence that Airbus or Swissair officials came to the United States to discuss the offer.

The only possible way discussions occurred in the United States is over the telephone. For instance, defendant argues that an international telephone call which involved BFG discussing the A310 proposal, pricing, flight testing, and an agenda for future face to face meetings should be considered as prefatory activity in the United States (D.I. 254 at Exhibit B) The issue of whether telephone discussions qualify as "in this country" has yet to be addressed by any court. It is important to point out that such discussions may relate to standard sales activities. On the other hand, an offer can potentially be presented over the telephone. In the present case, there is no evidence that any of the discussions rose to a significant level (i.e., that an offer was made on the telephone). Therefore, the Court will view the telephone communications in the case at bar

**73**

In contrast, the offers to Airbus and Swissair were made outside of this country. The Court, therefore, will find that none of the standard activities which occurred at BFG's Troy, Ohio location rise to the level of "substantial prefatory activity." Such a finding will not violate the policy concern against removing inventions from the public which the public has justifiably come to believe are freely available to all as a consequence of the sales activity since the communications in Europe apparently were confidential.

### C. Prior Publication

 In 1982, Dunlop Limited of England published a paper entitled "The Economic and Safety Aspects of Commercial Aircraft Carbon Brakes" which, according to defendant, describes the same intermediate overhaul brakes as patented by plaintiff. The paper was presented and distributed at the 1982 International Federation of Airworthiness (IFA) Annual International Conference held in Long Beach, California.

Section 102(b) provides that a patent claim is invalid if it encompasses that which has been "described in a printed publication in this or a foreign country ... more than one year prior to the date of the application of patent in the United States." 35 U.S.C. § 102(b). A party asserting that a patent claim is invalid under 35 U.S.C. § 102 as being anticipated must show that each element of the claim in issue is found in the printed publication. *Kalman v. Kimberly–Clark Corp.*, 713 F.2d 760, 771 (Fed.Cir. 1983), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1284, 79 L.Ed.2d 687 (1984). "It is the **claims** that measure the invention." *SRI Int'l v. Matsushita Electric Corp.*, 775 F.2d 1107, 1121 (Fed.Cir.1985) (emphasis in original).

At oral argument, BFG clearly established that each element of the claim at issue was not found in the Dunlop paper. BFG articulated several advantages of the EDL brake over the model proposed in the Dunlop paper including the (1) ability to reduce the brake envelope, (2) ability to reduce maximum pis-

ton travel, (3) ability to save weight, (4) ability to lower maximum brake operating temperatures, and (5) ability to increase disk life as a result of brake configuration. (D.I. 217 at B6; B13; B24–25; B42–43) Based on this evidence, the Court concludes that each element of the claims at issue were not found in the Dunlop paper and that, therefore, this paper does not constitute a prior publication as defined in section 102(b).

### IV. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment (D.I. 156) will be denied. An Order consistent with this Memorandum Opinion shall issue.

---

as standard sales activity and, thus, not rising to the level of sufficient prefatory activity in the United States.