11 F.3d 1071
 29 U.S.P.Q.2d 1389
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
BANNER ENGINEERING CORP., Plaintiff/Cross-Appellant,
v.
TRI-TRONICS COMPANY, INC., Defendant-Appellant.
 Nos. 93-1115, 93-1116, 93-1158.
 United States Court of Appeals, Federal Circuit.
 Oct. 27, 1993.
 
 Before ARCHER, LOURIE, and CLEVENGER, Circuit Judges.
 DECISION
 ARCHER, Circuit Judge.
 
 
 1
 Tri-Tronics Co., Inc., appeals from the judgment of the United States District Court for the District of Minnesota, Civil No. 4-90-112, -629 (entered Nov. 10, 1992), holding claims 1-7 and 10 of United States Patent No. 4,644,341 invalid and claims 3-7 and 10 not infringed, and enjoining Tri-Tronics from enforcing or attempting to enforce the patent. Banner Engineering Corp. cross-appeals from the district court's denial of an award of attorney fees. We vacate the judgment to the extent it denies Banner attorney fees and remand the case for a determination on this issue. In all other respects the judgment is affirmed.
 
 DISCUSSION
 I.
 
 2
 Banner and Tri-Tronics compete in the photoelectric sensing systems market. Tri-Tronics is the assignee of U.S. Patent No. 4,644,341, issued February 17, 1987 to Robert A. Warner (the Warner patent). The Warner patent is directed to a photoelectric sensing system in which a bargraph display is used to indicate visually the varying strength of an electrical signal that is output by a photoelectric emitting and receiving apparatus. After Tri-Tronics sued a distributor of Banner's for infringement of the Warner patent, Banner brought an action seeking a judgment declaring the Warner patent invalid, not infringed, and unenforceable, as well as attorney fees and costs and damages for patent misuse and unfair competition. Tri-Tronics dismissed its suit against Banner's distributor, and sued Banner for infringement of claims 1-7 and 10 of the Warner patent. The cases were consolidated for trial. After the close of discovery, Tri-Tronics withdrew its assertion of infringement of claims 1 and 2, and the case proceeded to trial without a jury.
 
 
 3
 After trial, the district court found that the subject matter of claims 1 and 2 of the Warner patent was anticipated by the Banner 9430 sensor, which Tri-Tronics had learned of just prior to filing suit against Banner's distributor and which had been on sale more than a year before the filing date of the application for the Warner patent. 35 U.S.C. Sec. 102(b) (1988). The district court held that the subject matter of claim 3 would have been obvious over (1) the Banner 9430 sensor; (2) the Banner 9430 sensor and the Banner "TM2B" sensor; (3) the Banner 9430 sensor and United States Patent No. 4,356,393 to Fayfield; (4) the Banner 9430 sensor and the Banner "Analog Multi-Beam" sensor; and (5) the Banner "TM2B" sensor and the Linear Databook of the National Semiconductor Corporation (1982).[1] 35 U.S.C. Sec. 103 (1988). The district court also held claims 4-7 and 10, which depend from claim 3, invalid for obviousness.
 
 
 4
 Without discussion, the district court found that claims 3-7 and 10 (the claims asserted by Tri-Tronics) were not infringed; enjoined Tri-Tronics from enforcing or attempting to enforce the patent; and denied Banner damages, attorney fees, and costs. Both parties appeal.
 
 II.
 
 5
 A. Tri-Tronics first argues that the district court was without jurisdiction to render judgment invalidating claims 1 and 2 because Tri-Tronics withdrew its assertion of infringement of those claims after discovery but before trial. Tri-Tronics also contends that the validity of claims 1 and 2 was not actually litigated. Banner counters that the district court had jurisdiction over claims 1 and 2 because Banner's declaratory judgment action and claims of patent misuse and unfair competition, which were still alive, related to claims 1 and 2. Banner also argues that the validity of claims 1 and 2 was in fact litigated.
 
 
 6
 "A party seeking a declaratory judgment of invalidity presents a claim independent of the patentee's charge of infringement." Cardinal Chem. Co. v. Morton Int'l Inc., 113 S.Ct. 1967, ----, 26 USPQ2d 1721, 1727 (1993). There is no dispute that the district court initially possessed jurisdiction over Banner's counterclaim as to claims 1 and 2. The court's jurisdiction over claims 1 and 2 having been established, the burden was on Tri-Tronics to show in light of all the facts and circumstances that a case or controversy no longer existed as to those claims sufficient to continue the district court's exercise of jurisdiction. See id. at ----, 26 USPQ2d at 1728. The mere voluntary dismissal of the infringement claim in the particular litigation did not in and of itself deprive the court of jurisdiction over the counterclaim.[2] Shelcore, Inc. v. Durham Indus., Inc., 745 F.2d 621, 624, 223 USPQ 584, 586 (Fed.Cir.1984); cf. Cardinal Chem., 113 S.Ct. at ----, 26 USPQ2d at 1727 (resolution of the question of infringement does not per se deprive the court of jurisdiction over a continuing counterclaim for invalidity). Thus we are not persuaded that the district court erred in exercising jurisdiction to invalidate claims 1 and 2.
 
 
 7
 Furthermore, Tri-Tronics's argument that validity was not in issue is without merit. After arguments by the parties concerning the issue of jurisdiction, the district court expressly ruled "to make it clear on the record" that it was going to take the matter of jurisdiction under advisement (Appendix at 324). The court heard testimony relating to claims 1 and 2. In addition, the validity of claims 1 and 2 remained as part of Banner's affirmative claim of unfair competition. Jurisdiction and validity therefore were clearly still at issue in the case and it is too late now for Tri-Tronics to complain if it in fact chose not to offer evidence of validity during the proceedings in the district court.
 
 
 8
 Tri-Tronics does not challenge on appeal the merits of the district court's finding that claims 1 and 2 were anticipated by the Banner 9430 sensor. Accordingly, the judgment invalidating those claims is affirmed.
 
 
 9
 B. Tri-Tronics next assails the district court's holding that the subject matter of claim 3 would have been obvious over several prior art combinations. Tri-Tronics first argues that the district court misconstrued claim 3 so as to permit a bargraph to be located anywhere in the circuit. This argument borders on the frivolous. The district court expressly held that claim 3 differed from claims 1 and 2 (and the 9430 sensor) precisely because claim 3 was limited to and required a demodulated signal input to the bargraph. This difference in claim interpretation was the very reason for and formed the basis of the district court's lengthy and thorough obviousness analysis as to claim 3.
 
 
 10
 Obviousness is a question of law, which depends on several basic factual inquiries: the scope and content of the prior art; the differences between the prior art and the claimed device; and the level of ordinary skill in the art. Ryko Mfg. Co. v. Nu-Star, Inc., 950 F.2d 714, 716, 21 USPQ2d 1053, 1055 (Fed.Cir.1991). Secondary considerations such as commercial success and long-felt need are also relevant. Id. We review the findings of the district court on the factual issues for clear error, Fed.R.Civ.P. 52, and we review the legal determination of obviousness de novo, Newell Cos. v. Kenney Mfg. Co., 864 F.2d 757, 762, 9 USPQ2d 1417, 1421 (Fed.Cir.1988).
 
 
 11
 It is undisputed that the prior art teaches the circuit sequence of claim 3 up to the bargraph. For example, the Banner TM2B sensor teaches a demodulated signal input to an electromechanical meter. The district court found that the 1982 Linear Databook taught bargraph displays to indicate light intensity; replacing electromechanical meters with bargraph displays; having a modulated signal input to a bargraph, and alternatively demodulating the signal with a peak detector prior to inputting it to the bargraph. The district court also found that the Fayfield patent teaches not only a modulated signal input to a single light emitting diode (as represented by Warner to the Patent and Trademark Office), but also processing that signal with a demodulator. And it is undisputed that the Banner 9430 sensor, which anticipated claims 1 and 2, monitors with a bargraph an electrical signal from a photosensor, albeit modulated. The district court also found that there was no nexus between any commercial success of the Tri-Tronics product and the claimed invention, that there was no long-felt need for the claimed invention, and that in fact Fayfield had simultaneously conceived the device of claim 3 but had not carried it out. From these findings, and consistent with the testimony of experts at trial, the district court concluded that it would have been an obvious design choice to demodulate a signal output of a photosensor prior to inputting it to a bargraph.
 
 
 12
 Tri-Tronics does not seriously challenge the suggestions of the combinations of the prior art or the secondary considerations. Rather, Tri-Tronics limits its analysis to each piece of prior art individually, asserting in conclusory fashion that each such reference is "cumulative" over the previous reference, and that the individual reference does not teach and suggest the claimed combination. The references, however, are far from cumulative; their individual teachings were well explicated by the district court and will not be repeated here. The test for obviousness is not whether a single reference teaches and suggests the claimed combination. First, if a prior art reference taught the claimed combination, the combination would be anticipated; obviousness would be obviated. Second, obviousness does not require that a single reference suggest all the elements of the claimed combination. In determining obviousness, references are read not in isolation but for what they fairly teach in combination with the prior art as a whole. In re Merck & Co., 800 F.2d 1091, 1097, 231 USPQ 375, 380 (Fed.Cir.1986). Consequently, Tri-Tronics's attack on the prior art--reference by reference--is not persuasive.
 
 
 13
 Tri-Tronics also argues that the district court failed to comprehend the supposedly inherent and unexpected benefit of feeding a demodulated signal into a bargraph--the ability of the sensor to "self-monitor" its alignment and thereby avert system shutdown by allowing physical realignment of the sensor during operation. Tri-Tronics contends that such a function is claimed in claim 3 as a "control means for manually adjusting said electronic processing circuit." This beneficial function, Tri-Tronics asserts, is undisclosed in the prior art and therefore precludes a determination that the invention of claim 3 would have been obvious. Banner, however, argues that the court correctly held that the claim would have been obvious because demodulation of a signal prior to a bargraph would have been an obvious design choice. Banner says that the "self-monitoring" function was disingenuously created during litigation, arguing that it is not claimed in the patent and cannot in fact be performed by the device of claim 3 any better than the prior art. Therefore, the purported function cannot save the claim from invalidity.
 
 
 14
 Claimed structure may be shown to have been obvious because it is suggested by the prior art, even though a particular benefit of that structure asserted by the patentee is not expressly disclosed in the prior art. In re Dillon, 919 F.2d 688, 692-93, 16 USPQ2d 1897, 1901 (Fed.Cir.1990) (in banc). Although a surprising or unexpected result of claimed structure may be indicative of nonobviousness, the question is one for evaluation by the court.
 
 
 15
 The district court in this case disagreed with Tri-Tronics's "critical sequence" theory--that the demodulated signal input to a bargraph yielded results surprising and unexpected from the teachings in the prior art. We cannot say that the district court clearly erred in this regard. It is not even clear that the invention of claim 3 in fact achieves a self-monitoring function and particularly one that would be better than the prior art combinations. The "self-monitoring" function is not claimed in the Warner patent. The "manually adjustable control means" of claim 3, on which Tri-Tronics relies, refers to a DC amplifier whose gain may be adjusted (with a screwdriver for example) so as to increase the amplitude of the DC signal output to the bargraph, see, e.g., Warner patent, col. 5, lines 23-28; col. 7, lines 10-31, and not to a "self-monitoring" function. Moreover, we have not been shown even a mention in the patent document or the prosecution history of Tri-Tronics's now-"critical" self-monitoring function.
 
 
 16
 In view of the express suggestions in the prior art to make the combination of claim 3, we agree with the district court that such combination would have been obvious to one of ordinary skill in the art. We therefore affirm the judgment of the district court that claim 3 is invalid.[3]
 
 
 17
 C. Tri-Tronics finally argues that the district court erred in finding no infringement of claims 3-7 and 10 because it failed to compare the accused product to the claims. Tri-Tronics similarly argues that the district court erred in enjoining Tri-Tronics from asserting the patent because it failed to find the patent unenforceable for inequitable conduct. We disagree with both arguments. Because invalid claims cannot be infringed, Richdel, Inc. v. Sunspool Corp., 714 F.2d 1573, 1580, 219 USPQ 8, 12 (Fed.Cir.1983), the district court did nothing wrong in finding that the invalid claims asserted by Tri-Tronics, 3-7 and 10, were not infringed. In addition, it is not error for the district court to enjoin a patentee from enforcing or attempting to enforce patent claims that the court has held invalid. Although the district court's language enjoined Tri-Tronics from enforcing or attempting to enforce the "patent," the clear purport of the injunction was to prevent Tri-Tronics from enforcing the claims that the district court discussed in its opinion and held invalid, i.e., claims 1-7 and 10.
 
 
 18
 D. In its cross-appeal, Banner argues that the district court should have awarded it attorney fees because Warner engaged in inequitable conduct in obtaining his patent and committed patent misuse by asserting an invalid and unenforceable patent. Specifically, Banner alleged that Warner affirmatively misrepresented to the Patent and Trademark Office the nature of the Fayfield patent, and failed to disclose to the Office the 1982 Linear Databook, which Warner had in his possession and actually relied on in developing his photosensing apparatus.
 
 
 19
 While the enforcement of a patent later held to be invalid or unenforceable is not properly characterized as "patent misuse," we have held that inequitable conduct may constitute a basis for an award of attorney fees under 35 U.S.C. Sec. 285 (1988). A.B. Chance Co. v. RTE Corp., 854 F.2d 1307, 1312-13, 7 USPQ2d 1881, 1885 (Fed.Cir.1988). Tri-Tronics concedes that the district court "committed ... legal error[ ]" when it "failed to make findings on its denial of attorney's fees."[4] Accordingly, the decision of the district court denying Banner attorney fees is vacated and the case is remanded for a determination as to this issue.
 
 COSTS
 
 20
 Banner shall have its costs.
 
 
 
 [1]
 Of the above references, only the Fayfield '393 patent was before the examiner. As to that reference, Banner alleged and the district court found that Warner misrepresented its teachings
 
 
 [2]
 Tri-Tronics indicated at oral argument that the infringement claims were dismissed without prejudice
 
 
 [3]
 Tri-Tronics has not challenged on appeal the judgment of the district court invalidating claims 4-7 and 10, which depend from claim 3, for obviousness
 
 
 [4]
 Reply Br. for Appellant at 31