ENDORSEMENT RULING AND ORDER
 

 CHATIGNY, District Judge.
 

 This is a patent infringement case. The patent at issue, U.S. Patent No. 5,255,686 (the “ ’636 patent”) claims an apparatus and method for cooling an internal combustion engine. Plaintiffs allege that General Motors Corporation has infringed the patent by making and selling cars, such as the 1992 Corvette, that contain an “LT1 engine cooling system.”
 
 [1]
 
 GM has moved for summary judgment [doe. # 117] on the ground that it placed the 1992 Corvette with its LT1 engine cooling system “on sale” more than one year before July 1, 1992, the day the application for the ’636 patent was filed. After careful consideration of the parties’ briefs and oral arguments, GM’s motion for summary judgment is granted.
 

 An inventor who does not promptly seek a patent runs the risk of losing the right to obtain a patent. Under 35 U.S.C. § 102(b), an inventor loses his or her right to obtain a patent if the invention was “on sale” more than one year prior to the date of the patent application. The on sale bar “is not limited to sales by the inventor or one under his control, but may result from activities of a third party.” J.A
 
 LaPorte, Inc. v. Norfolk Dredging Co.,
 
 787 F.2d 1577, 1581 (Fed.Cir.), cert. denied, 479 U.S. 884, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986);
 
 In re Caveney,
 
 761 F.2d 671, 675 (Fed.Cir.1985).
 

 In this case, summary judgment is appropriate because the record establishes that GM and its dealers placed the 1992 Corvette with its LT1 engine cooling system on sale more than a year before the patent application was filed. It is undisputed that on June 13, 1991, a retail customer named Najarían entered into a contract with a GM dealer relating to the purchase of a 1992 Corvette with the LT1 engine cooling system. In executing the contract, the dealer “agree[d] to sell” and the customer “agree[d] to purchase” a 1992 Corvette with an “LT1” engine. The customer paid a deposit of $500 and the dealer transmitted the order to GM.
 
 [2]
 

 Plaintiffs contend that the on sale bar does not apply to the Najarían transaction because the dealer’s agreement to sell was merely a step in preparation for a sale and not an offer to sell.
 
 See Intel Corp. v. U.S. Int’l Trade Comm’n,
 
 946 F.2d 821, 830 (Fed. Cir.1991). However, an offer to sell will
 
 *156
 
 raise the on sale bar even though the product is not on hand and ready for delivery.
 
 See Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.,
 
 731 F.2d 831, 837 (Fed. Cir.1984). Moreover, the dealer’s agreement to sell went beyond the level of merely indefinite or nebulous discussions about a possible sale.
 
 TRW Fin. Sys., Inc. v. Unisys Corp.,
 
 835 F.Supp. 994, 1003 (E.D.Mich.1993). It is undisputed that the dealer, in entering into the transaction, intended to deliver the car to the customer when it became available.
 
 See
 
 Transcript of Oral Argument of May 10, 1996, at 61.
 

 Though this case involves sales activities by third parties, rather than the inventor or someone under his control, the policies underlying the on sale bar justify its application here.
 
 [3]
 
 Plaintiff Evans, the inventor named in the ’636 patent, claims that he reduced the patented cooling system to practice by July 1986. However, he did not file an application for a patent until approximately six years later.
 
 [4]
 
 By the time Evans filed his application, GM’s dealers and retail customers had come to believe that the 1992 Corvette and its LT1 engine cooling system were freely available.
 
 [5]
 
 In these circumstances, application of the on sale bar serves the important policy of encouraging early filing of patent applications as well as the policy against removing inventions from the public domain.
 
 See J.A LaPorte, Inc.,
 
 787 F.2d at 1583;
 
 In re Caveney,
 
 761 F.2d at 676.
 

 GM argues that summary judgment is also appropriate because the claimed invention was in “public use” more than a year before the patent application was filed. 35 U.S.C. § 102(b). It is undisputed that in May and June 1991, numerous 1992 Corvettes with the LT1 engine cooling system were driven by test drivers on public highways and roads. Because summary judgment is appropriate based on the on sale bar, it is unnecessary to address the question whether summary judgment would also be appropriate based on the public use bar.
 

 Accordingly, defendant’s motion for summary judgment is hereby granted.
 

 So ordered.
 

 [1]
 

 . Plaintiffs contend that GM stole the "technology” from the named inventor, John W. Evans. Evans has sued GM in a separate action for misappropriation of trade secrets.
 

 [2]
 

 . GM contends that the Najarían transaction is typical of hundreds of orders for 1992 Corvettes with the LT1 engine cooling system that were placed by retail customers prior to the critical date of July 1, 1991. Computer records show that as of June 30, 1991, GM received from its dealers a total of 2,078 orders for 1992 Corvettes with the LT1 engine cooling system. Of those, 318 were placed for specifically identified retail customers and marked "sold.” Under § 102(b), a single offer to sell is enough to bar patentability.
 
 A.B. Chance Co. v. RTE Corp.,
 
 854 F.2d 1307, 1311 (Fed.Cir. 1988).
 

 [3]
 

 . In determining whether the on sale bar applies, it is necessary to consider the policies underlying the bar.
 
 Manville Sales Corp. v. Paramount Sys., Inc.,
 
 917 F.2d 544, 549 (Fed.Cir.1990). They are: (1) a policy against removing inventions from the public domain that the public has justifiably come to believe are freely available due to commercialization by the inventor or others; (2) a policy favoring prompt and widespread disclosure of inventions to the public; (3) a policy against allowing an inventor to extend the patent period; and (4) a policy of giving an inventor a reasonable time following sales activity to determine whether a patent would be worthwhile.
 

 [4]
 

 . Plaintiffs contend that Evans did not attempt to commercialize or file a patent application on his invention because he was testing the technology, working on related technology, was in poor financial condition and could not obtain financial backing.
 

 [5]
 

 . At his deposition, Evans testified that he was prompted to file the application after learning in September 1991 that GM had disclosed his "technology” to the public.