**ARMCO, INC., Appellant,**

v.

**CYCLOPS CORPORATION, Appellee.**

**Appeal No. 85–2727.**

United States Court of Appeals,
Federal Circuit.

May 8, 1986.

Donald R. Dunner, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, D.C., for appellant. With him on the brief was Thomas H. Jenkins. Robert H. Johnson, ARMCO Corporate Office, of Middletown, Ohio, and Albert H. Strasser and Joseph V. Hoffman, Frost & Jacobs, Cincinnati, Ohio, of counsel.

William H. Webb, Webb, Burden, Robinson & Webb, P.A., Pittsburgh, Pa., for appellee. With him on the brief was David C. Hanson.

Before RICH, DAVIS and SMITH, Circuit Judges.

DAVIS, Circuit Judge.

Appellant Armco, Inc. (Armco) appeals from the Memorandum and Order of the United States District Court for the Western District of Pennsylvania,[1] granting appellee Cyclops Corporation's (Cyclops) motion for summary judgment and holding that Armco's United States Patent No. 3,556,776 ('776 patent)[2] was invalid under 35 U.S.C. § 102(b) because the subject matter of the patent was on sale or in public use more than one year prior to the patent's effective filing date.[3] We reverse and remand because with respect to the section 102(b) issue a trial is necessary for the resolution of disputed factual issues that are material to appellant's cause.

I.

During the late 1950's, appellant Armco produced alloys for consideration by North American Aviation (NAA) for possible use in experimental aircraft. NAA was under contract with the United States to test and evaluate various stainless steel alloys for

---

1. *Armco, Inc. v. Cyclops Corp.*, No. 82 Civ. 1126 (W.D.Pa. July 9, 1985).

2. The '776 patent, entitled "Stainless Steel," issued on January 19, 1971 to co-inventors William C. Clarke, Jr. and D. Cameron Perry.

3. 35 U.S.C. § 102 provides, in part, that

A person shall be entitled to a patent unless—
(b) the invention was ... in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States.

use in the B–70 bomber program and to build experimental aircraft. The alloys produced by Armco and others during this period were inadequate because they did not provide the full range of properties (i.e., strength, ductility, weldability, and stress corrosion resistance) required by NAA. Specifically, the need arose for an alloy suitable for utilization in bar and heavy section application. Armco undertook to develop a new alloy, PH 13–8 Mo, to provide those needs. PH 13–8 Mo was specifically designed to rectify a lack of toughness in the short transverse direction in prior alloys.

PH 13–8 Mo is a martensitic precipitation-hardenable chromium-nickel-aluminum stainless steel containing about 2% molybdenum. It is further characterized as containing lower sulfur, nitrogen and carbon than prior alloys of this type. Precipitation-hardenable stainless steels are a group of high strength stainless steels that contain a solute metal such as aluminum. After working or fabrication, the steel is subjected to a heat treatment, and the solute metal, or a compound of it, precipitates in discrete locations in the steel, thereby providing the steel with increased strength.

In June 1959, Armco produced two batches of PH 13–8 Mo. After tentatively evaluating the properties of these heats, Armco forwarded samples to NAA for further evaluation. When NAA first tested the PH 13–8 Mo in 1959–61, the alloy was made by an air melt process and had a relatively high sulfur and nitrogen content. Problems arose with respect to the air-melted alloy—in particular, with respect to transverse ductility. Representatives of Armco and NAA met in October 1961 and discussed test results and possible corrective modifications of the composition.

Further experimentation with PH 13–8 Mo continued. Contemporaneously, Armco developed a similar alloy (PH 14–8 Mo) with lower sulfur and nitrogen content, using a vacuum induction melting process.

In November 1962, Armco began applying this technology to commercial size heats of PH 13–8 Mo. In conjunction with the vacuum induction melting process, Armco decided to employ a consumable electrode vacuum remelting process. Together, the processes were known as a double vacuum melt. Preliminary testing revealed that this double vacuum melt alloy had substantially lower contents of manganese, phosphorous, silicon, sulfur, and nitrogen than the air melt alloys, and possessed good tensile ductility (even in the center of the short transverse direction) as well as a combination of high impact and tensile strengths. These test results led Armco to believe that the double vacuum melt process could produce an alloy suitable for the new NASA Supersonic Transport (SST) program. In March 1963, Lockheed Aircraft Corporation (Lockheed), under contract with the Government to test and evaluate materials for possible use in the SST program, ordered samples of PH 13–8 Mo for testing.

## II.

The '776 patent—disclosing stainless steel alloys of the general type of PH 13–8 Mo fabricated by the air melt or double vacuum melt processes—issued from an application filed October 10, 1966, which was a continuation-in-part of an application filed June 19, 1964, which was itself a continuation-in-part of an application filed August 2, 1963.[4]

On June 22, 1982, Armco—as assignee of the inventors—filed this action charging Cyclops with infringement of the '776 patent. Cyclops filed a counterclaim and moved for summary judgment alleging that the patent was invalid under four grounds as follows:

(1) Under 35 U.S.C. § 102(b), the invention claimed under patent '776 was on sale, sold or put in public use at least one year prior to the effective filing date of the patent.

4. The district court adopted each of these dates as the pertinent filing date for one or another claims of the '776 patent. Although Armco does not agree with the acceptance of the dates after August 2, 1963, it has not appealed the district court's determination of the critical dates.

(2) Under 35 U.S.C. § 102(e), co-inventor Perry's individual work in patent 3,278,298 was invalidating prior art.

(3) Under 35 U.S.C. §§ 102, 103, patent '776 claims the same alloys claimed under Goller patent 2,505,762 filed 20 years earlier.

(4) Deficiencies in the '776 patent application proceedings before the Patent Office rendered the patent invalid.

The district court considered only the first question and granted Cyclop's motion for summary judgment. Concluding that no genuine issue of material fact existed, the court held that the invention as claimed in the '776 patent was on sale or in public use one year prior to the effective filing dates of the patent. Because a finding of on sale or in public use was sufficient to render the patent invalid, the court held it unnecessary to consider the remaining grounds for invalidity.

Before the district court, Cyclops argued that the stainless steel alloy claimed under patent '776 was sampled and sold to various aircraft manufacturers during the late 1950's and early 1960's in an attempt by Armco to obtain commercial orders for the alloy for use in the development of the B–70 bomber and SST Transport. Cyclops also asserted that any experimentation that occurred was solely on the part of the aircraft manufacturers to determine which alloys best suited their purposes. In response, Armco argued that submission of the samples to the aircraft manufacturers was merely for experimental purposes to obtain further data on the properties of the alloy to aid in perfecting it.

The only question we decide today is whether summary judgment was properly granted to Cyclops or whether there were disputed issues of material fact calling for a trial.

### III.

It goes without saying that summary judgment is properly granted only where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The mov-ing party bears the burden of establishing the absence of any genuine issue of material fact. *Cooper v. Ford Motor Co.,* 748 F.2d 677, 679 (Fed.Cir.1984); *SRI Int'l v. Matsushita Electric Corp.,* 775 F.2d 1107, 1116 (Fed.Cir.1985). The party opposing the motion is required merely to point to an evidentiary conflict created on the record, *Barmag Barmer Maschinenfabrik AG v. Murata Machinery,* 731 F.2d 831, 836 (Fed.Cir.1984); *SRI Int'l,* 775 F.2d at 1116, and such issues of material fact should not be resolved conclusively in the opposing party's favor on the motion for summary judgment. Mere denials or conclusory statements are of course insufficient. *Barmag Barmer,* 731 F.2d at 836; *SRI Int'l,* 775 F.2d at 1116. The district court must view all the evidence in a light most favorable to the opponent (or non-movant) and draw all reasonable inferences in its favor. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). In sum, all significant doubt over pertinent factual issues must be resolved in favor of the party opposing summary judgment. *P.M. Palumbo v. Don-Joy Co.,* 762 F.2d 969, 973 (Fed.Cir.1985); *SRI Int'l,* 775 F.2d at 1116. A reviewing court determines for itself whether the above standards for summary judgment have been met; we are not bound in any respect by the district court's ruling that there was no material factual dispute in this matter. *Hodosh v. Block Drug Co.,* 786 F.2d 1136 (Fed.Cir.1986).

### IV.

In granting Cyclops' motion for summary judgment, the district court erroneously resolved a number of disputed factual issues against Armco. Contrary to the court's conclusion that there was no dispute that the primary purpose of the testing by NAA and Lockheed was to allow the companies the opportunity to select the alloy best suited to *their* needs and accordingly was commercial rather than experimental, there existed sufficient material evidence that Armco's experimental goal was the development of an alloy suitable for its

intended purpose and not the commercialization of the alloy—i.e., sufficient evidence to raise a genuine dispute and thus to override the lower court's disposition of the case on Cyclops' motion for summary judgment.

For instance, the district court, in determining that Armco's purpose was primarily commercial, concluded that Armco placed no restrictions on the use of the material provided to NAA and therefore that the true nature of the relationship between Armco and NAA was one of acceptance testing. However, the testimony of Lawrence Looby, an Armco development engineer, indicated that, with regard to the restrictions on the use of the alloy, as a matter of general practice Armco's research department would not have shipped the alloy to NAA unless it was certain that the material would be kept confidential. Jt.App. at 459. *See TP Laboratories, Inc. v. Professional Positioners, Inc.*, 724 F.2d 965, 972 (Fed.Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 108, 83 L.Ed.2d 51 (1984) (no requirement of a formal pledge of confidentiality). Concerning the true nature of the relationship between Armco and NAA, Armco submitted materials that referred to the experimental nature of the alloy, Jt. App. at 166, 167, 256, 266, 613 ¶ 3,[5] and that the purpose of the shipments was to test whether the alloy would work for its intended purpose.[6] In deciding that there was no genuine factual dispute, the district court further ignored evidence that provisions were made for reporting back to Armco the results of the testing and that modifications made to the alloy by Armco were based on these reports. *Id.* at 297–98 ¶ 6, 614 ¶ 6.[7] Thus, there was sufficient evidence to demonstrate that an issue of material fact existed concerning whether the testing by NAA was acceptance testing or designed to aid Armco in formulating an alloy suitable for its intended purpose.

The court also erred in concluding that it was undisputed that internal Armco documents discussing sales and orders indicated commercial intent for the alloy shipments. Lawrence Looby's testimony and affidavit specifically indicated that sales authorization and purchase orders were issued as a regular business practice even during the course of experimentation. *Id.* at 298 ¶ 7. Furthermore, a senior research engineer at NAA, William Anderson, stated that purchase orders were required as a matter of common practice for all material received at NAA. *Id.* at 614 ¶ 7.

There also was, quite clearly, a dispute as to the meaning of the term "commercial heat". The deposition of D. Cameron Perry (one of the inventors) indicated, contrary

---

5. *See, e.g.,* Jt.App. at 166 where internal Armco memorandum states that

North American Aviation Inc., ha[s] completed preliminary tests on the two heats ... shipped to them about two months ago.... [T]hey have laid out a proposed program of further investigation, indicating a definite interest in the alloy.

*See also* Affidavit of William Anderson, a senior research engineer at NAA. Mr. Anderson stated that

Armco undertook to provide us with experimental alloys which might fulfill our needs. One of the experimental alloys which was proposed was an alloy known as PH 13–8 Mo. This alloy, which I understood was experimental, was supplied to us by Armco in small quantities, usually in bar form, solely for testing and evaluation purposes.

Jt.App. at 613 ¶ 3.

6. *See infra* n. 8 and accompanying text. Perry, one of the inventors, also stated in his affidavit, Jt.App. at 307 ¶ 4, that

On a number of occasions, as a result of information supplied us by the aircraft companies, Mr. Clarke and I modified the chemistry and/or the processing parameters of the PH 13–8 Mo alloy we were developing. These modifications were the direct result of problems which were encountered during the testing and evaluation of the alloy by the aircraft companies. For example, one of them might encounter a characteristic, such as a heat treating characteristic or a fabricating characteristic, which did not work the way they would like to have it work. We would then have to change either the chemistry of the alloy or its processing parameters, or both, in an effort to overcome the perceived shortcomings.

7. *See* affidavit of William Anderson, Jt.App. at 614 ¶ 6, where Mr. Anderson stated that "As a result of these inquiries, they would modify the chemistry of the alloy ... in an effort to meet our anticipated needs."

to the court's disposition, that commercial heat did not necessarily mean a heat used for commercial purposes but rather meant a heat of commercial size. *Id.* at 548–49.

The district court also concluded that claims 1–6 and 8–15 were invalid in view of the alloy shipped to Lockheed in 1963. The court said that Armco had established prices for vacuum-induction melted PH 13–8 Mo by February 1963 and supplied samples of the alloy to Lockheed in May 1963, and that there was no experimental purpose on the part of Armco behind those deliveries. However, Armco introduced sufficient evidence before the district court that it was both customary and necessary to have the experimental alloys tested by the aircraft companies. *Id.* at 310 ¶ 10.[8] Thus, there was a genuine dispute as to whether Armco had to use the aircraft companies for testing of the alloys.

Furthermore, although there was evidence that Armco charged and received payment for the Lockheed samples, additional evidence suggested that it was customary in the industry to charge for experimental samples. *Id.* at 298–99 ¶ 8. The deposition of Lawrence Looby declared that Armco could not afford to furnish free samples because of expensive production costs. *Id.* In addition, the receipts from experimental samples were deposited to a research account for the developmental alloy and did not become part of the mill profits. *Id.* at 308–09 ¶ 7. The short of it is that the district court erred in failing to see a material dispute as to whether Armco would seek payment from Lockheed as long as Lockheed was performing needed experiments on PH 13–8 Mo.

## CONCLUSION

In these circumstances, it cannot be said that there was no dispute on the record that the samples were sold for commercial and non-experimental purposes. If inferences are to be drawn, they must be drawn

in favor of the party against whom the motion was directed. Because there was evidence on both sides as to whether the alloys were supplied to NAA and Lockheed for the purposes of refining them and finding what was necessary to complete the invention, the district court erred in resolving disputed issues of material fact in favor of Cyclops. Where, as here, there are genuinely disputed issues of material fact, summary judgment simply cannot be utilized as the tool for deciding those issues. The grant of summary judgment on the section 102(b) issue of on sale or public use is therefore reversed and the case is remanded for disposition of the case in a manner consistent with this opinion.

REVERSED AND REMANDED.

8. D. Cameron Perry stated, by affidavit, that "it was logical to look to [the aircraft companies] for test data, particularly since they were testing the materials for diverse properties and charac-teristics and had facilities and expertise to formulate and conduct test procedures which were beyond [Armco's] capabilities." Jt.App. at 310 ¶ 10.