**FINISH ENGINEERING COMPANY, INC., etc., Appellee,**

v.

**ZERPA INDUSTRIES, INC., etc., Appellant.**

**Appeal No. 86–747.**

United States Court of Appeals, Federal Circuit.

Dec. 2, 1986.

As Amended Dec. 2, 1986.

Conrad R. Solum, Jr., Lyon & Lyon, of Los Angeles, Cal., argued for appellant. With him on the brief was Jon E. Hokanson.

David C. Hanson, Webb, Burden, Robinson & Webb, P.A., of Pittsburgh, Pa., argued for appellee.

Before RICH and DAVIS, Circuit Judges, and BENNETT, Senior Circuit Judge.

DAVIS, Circuit Judge.

Appellant Zerpa Industries, Inc. (Zerpa) appeals from the Opinion and Order of the United States District Court for the Western District of Pennsylvania,[1] granting the motion of appellee Finish Engineering Company, Inc. (Finish) for partial summary judgment and holding claims 1 through 7 and 14 of Zerpa's United States Patent No. 4,457,805 ('805 patent)[2] invalid for obviousness under 35 U.S.C. § 103. We reverse and remand because a trial is needed for the resolution of disputed factual issues that are material to Zerpa's cause.

### I.

The '805 patent is concerned with the small scale recovery of clean solvent from a mixture of solvent and contaminants.[3] The patent discloses an apparatus for such recovery through the use of a distillation apparatus. Contaminated solvent flows from a sink into a plastic bag positioned in an open top tank mounted below the sink, where the solvent is heated and vaporized. A tube leading from the bank carries the solvent vapor to a condenser where it is collected as clean, liquid solvent. The clean solvent is then pumped back to the tap above the sink.

The most advantageous feature of the invention appears to be the disposable plastic bag. Solid residue from the contaminated solvent accumulates in the plastic bag, which is discarded after the solvent is completely evaporated.

On July 3, 1984, the day the '805 patent was issued, Finish filed suit against Zerpa seeking a declaratory judgment declaring the patent invalid, and a preliminary and permanent injunction against the enforcement of the patent. Zerpa filed a counterclaim for infringement. Finish then filed a motion for partial summary judgment directed to claims 1 through 7 and 14, asserting that the subject matter of these claims would have been obvious to one of ordinary skill in the art at the time the invention was made. Following a hearing on the motion, the District Court (in its Opinion and Order dated June 27, 1985) granted Finish's motion, adjudged the pertinent claims to be invalid, and enjoined Zerpa from enforcing these claims of the '805 patent against Finish and its customers.

The District Court's conclusions relevant to this appeal are that: (1) Finish effective-

---

1. *Finish Engineering Co. v. Zerpa Indus.,* 612 F.Supp. 300 (W.D.Pa.1985).

2. The '805 patent, entitled "Solvent Recovery Apparatus and Method" and assigned to Zerpa, issued July 3, 1984 to Manuel Pastor on an application filed April 22, 1983.

3. Typical solvents include lacquer thinner and acetone.

ly rebutted the presumption of validity; (2) the '805 patent was invalid in view of the prior art because it would have been obvious to one of ordinary skill in the art; (3) the examiner erroneously concluded that the prior art reference, Downs, U.S. Patent No. 2,794,570, was non-analogous art; and (4) Zerpa failed to establish a nexus between the commercial success of its invention and the claimed invention.

The District Court considered three prior art references, which had all been before the Patent and Trademark Office (PTO). The Lee patent, U.S. Patent No. 3,890,988, issued June 24, 1975, discloses a solvent recovery system using a faucet and sink, in which a plastic bag is used to receive the contaminants. The Lee apparatus teaches cleaning the solvents by straining and filtering, rather than distilling (the method used by the '805 patent). Downs, U.S. Patent No. 2,794,570, issued June 4, 1957, discloses a replaceable flexible tank liner for extending the life of fluid holding tanks. Finally, Hoover, U.S. Patent No. 4,323,429, issued April 6, 1982, discloses a small batch solvent recovery system using a distillation device; Hoover does not disclose a plastic bag or mounting means.

On appeal, Zerpa contends that the trial court erred either in failing to recognize genuine issues of material fact or in resolving issues of material fact in favor of Finish. Primarily, Zerpa argues that the court erred in (1) substituting its unsupported opinion for that of the PTO examiner that the Downs reference is analogous art, and (2) ignoring Zerpa's evidence on four secondary considerations of nonobviousness: (a) commercial success, (b) failure of others, (c) copying by Finish, and (d) favorable industry response. We need decide only whether summary judgment was properly granted or whether there were, instead, disputed issues of material fact calling for a trial.

## II.

An appellate court, reviewing a grant of summary judgment, determines for itself whether a "genuine issue as to any materi-

al fact" exists and, if not, whether "the moving party is entitled to a judgment as a matter of law." F.R.Civ.P. 56(c). The non-movant "is required merely to point to an evidentiary conflict created on the record." *Armco, Inc. v. Cyclops Corp.*, 791 F.2d 147, 149, 229 USPQ 721, 722 (Fed.Cir.1986). All reasonable inferences must be drawn in favor of the party opposing the motion and where "there is doubt as to the existence of a genuine issue of material fact, that doubt must be resolved in favor of the nonmovant." *Cooper v. Ford Motor Co.*, 748 F.2d 677, 679, 223 USPQ 1286, 1288 (Fed.Cir. 1984). In other words, where "there are genuinely disputed issues of material fact, summary judgment cannot be utilized as the tool for deciding those issues." *Armco, Inc., supra*, 791 F.2d at 151, 229 USPQ at 724.

## III.

The District Court erroneously resolved a number of disputed factual issues against Zerpa and in favor of Finish on the latter's motion for summary judgment. Although the trial court decided that Downs was from the "same art or an art extremely closely analogous to the Pastor patent," the Patent and Trademark Office examiner had previously found that Downs was non-analogous art. The examiner stated: "the Downs references, drawn to the art of lined tanks, is sufficiently remote from batch still subject matter of the proposed primary references that, but for the guidance of applicant's disclosure, the routineer would not be motivated to make the proposed combinations." The determination whether prior art is analogous involves some factual issues concerning whether the reference is within the field of the inventor's endeavor or reasonably pertinent to the particular problem with which the invention was involved. *See Union Carbide Corp. v. American Can Co.*, 724 F.2d 1567, 1572, 220 USPQ 584, 588 (Fed.Cir. 1984). Nevertheless, the District Court erroneously resolved the factual dispute in favor of Finish, the movant for summary judgment, by expressly rejecting the exam-

iner's distinction between "batch distillation" art and "lined tank" art. Zerpa's contention that Downs is non-analogous art, supported as it was by the examiner's statement, is sufficient to raise a genuine issue of material fact.[4]

The District Court also erred in resolving against Zerpa several disputed material factual issues relating to secondary considerations of obviousness. For one thing, the court erred in concluding that Zerpa failed to raise a genuine issue of material fact concerning the nexus between the commercial success of its product and the claims of the patent. The trial court acknowledged Zerpa's commercial success— first year sales of approximately $100,000, second year sales of approximately $900,000, and third year sales of approximately $1,500,000—but concluded that Zerpa "fail[ed] to support this success as being the result of its invention." Zerpa, however, introduced materials supporting the position that the commercial success of the still was due to the technical advantages of the patented subject matter. Numerous persons stated, by affidavit, that the liner bag in the tank was advantageous over the prior art because it permitted simple, efficient, and inexpensive operation of the solvent recovery system.[5] Other individuals stated that the technical aspects of the system made the system practical for small companies using moderate amounts of solvent as a result of the cost savings associated with the system and the ease with which the system could be operated and cleaned.[6]

Finish challenged Zerpa's arguments concerning commercial success and introduced materials to the effect that greater governmental control over the disposal of pollutants led to a growing market for small distillation devices. Finish points to 40 C.F.R. § 261.6[7] and states in its brief that "Zerpa ... has not explained why the sudden application of criminal penalties may not have been the reason for the sales of Zerpa's ... stills." Thus, Finish does not really challenge the proposition that there are material fact issues in dispute, but rather incorrectly argues that Zerpa has failed to resolve the existence of all those factual issues. However, it is the moving party, here Finish, that bears the burden of showing the absence of all genuine issues of material fact. The nonmovant (Zerpa) need merely point to an evidentiary dispute created on the record, and the trial court must take the materials presented by the nonmovant in its favor. The point is that there was sufficient material to demonstrate the existence of a genuine dispute as to the nexus between the commercial success of the apparatus and the claimed invention to make erroneous the trial court's disposition of that matter on a motion for summary judgment.

Zerpa also introduced material bearing on copying by Finish; the presentation was that Finish attempted to obtain a license under the '805 patent, and failing to do so, later copied the Zerpa commercial apparatus.[8] As stated, *supra*, any doubt as to the existence of copying by Finish must be resolved in Zerpa's favor. The trial court ignored Zerpa's showing and thus erred in resolving the issue in Finish's favor.

In granting Finish's motion for summary judgment, the District Court also ignored material introduced by Zerpa indicating failure of others to solve the problems of small scale solvent recovery. This was that, after recognizing a need for a small scale solvent recovery system in 1978, three individuals associated with Zerpa

---

**4.** A motion of summary judgment may be opposed "by any of the kinds of evidentiary materials listed in [Fed.R.Civ.P.] 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, — U.S. —, —, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

**5.** *See, e.g.*, affidavit of Otto Wilson, App. at 115 ¶ 4; *id.* at 116 ¶ 7.

**6.** *See, e.g.*, affidavit of Antonio Zertuche, President of Zerpa, App. at 111 ¶ 15.

**7.** This section provides criminal penalties for improper disposal of solvent.

**8.** *See* affidavit of Jose Zertuche, Chairman of the Board of Zerpa, App. at 140 ¶ 13; *id.* at 152 ¶ 39.

built a small scale recovery system in 1978–79 to meet that need; the system, however, was a failure.[9] The trial court failed to consider this material and interpret it in a light most favorable to Zerpa.

There was also sufficient showing by Zerpa that demonstrated, for purposes of avoidance of summary judgment, the favorable acceptance of the solvent recovery system by industry. To that end, the record contains a showing of favorable trade articles, as well as favorable customer response.

## IV.

For these reasons, the grant of summary judgment of invalidity is reversed and the case is remanded for trial in accordance with this opinion.

REVERSED AND REMANDED.

---

9. See affidavit of Antonic Zertuche, App. at 109–10 ¶¶ 9–10; affidavit of Kenneth Truffnell, App. at 130 ¶¶ 4–5; and affidavit of Jose Zertuche, App. at 140 ¶¶ 13–14, stating that "[p]rior to developing our own system, [we contacted representatives] of the solvent recovery industry, presented them with our problem, and asked them if they knew of a solution to this prob-

lem.... No one knew of an acceptable solution. One of the companies contacted ... was Finish."