ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of --                              )
                                          )
CLC Construction Company                  )        ASBCA No. 59110
                                          )
Under Contract No. W91B4N-11-C-8066       )

APPEARANCE FOR THE APPELLANT:             Mr. Costa Maroulis
                                           CFO/Contracts Consultant

APPEARANCES FOR THE GOVERNMENT:           Scott N. Flesch, Esq.
                                           Army Chief Trial Attorney
                                          MAJ Ronald M. Herrmann, JA
                                           Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE MCNULTY
ON THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT

This appeal involves a termination for default of a contract for design and construction services to be performed in Afghanistan. The government has moved for summary judgment, arguing appellant engaged in illegal conduct to obtain the contract making the contract void *ab initio*, which appellant allegedly has failed to dispute, and thus appellant's contract was properly set aside by the government.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. On June 13, 2011, the Bagram Regional Contract Center (the government) awarded Contract No. W91B4N-11-C-8066 in the total amount of $2,381,456 to CLC Construction Company (CLC or appellant) for the design and construction of a courthouse in Afghanistan (R4, tab 1 at 1-2, 5). The contract included by reference, Federal Acquisition Regulation (FAR) clauses 52.203-8, CANCELLATION, RESCISSION, AND RECOVERY OF FUNDS FOR ILLEGAL OR IMPROPER ACTIVITY (JAN 1997); and 52.249-10, DEFAULT (FIXED-PRICE CONSTRUCTION) (APR 1984) (R4, tab 1 at 38-39).

2. On June 15, 2013, the government terminated the contract for its convenience. The government requested that appellant submit its termination settlement proposal within 30 days of the termination. (Gov't mot., ex. G-6)

3. Effective October 3, 2013, in a final decision, the contracting officer modified the contract, rescinding the termination for convenience and terminating the

contract for default instead. The contracting officer provided the following rationale for the modification:

> It has recently come to the attention of this office that CLC had access to source selection information, including the Independent Government Cost Estimate and specific Government requirements. Companies are prohibited from knowingly obtaining source selection information before the award of any contract. CLC intentionally used source selection information to propose and accept the JCIP Courthouse contract.

(R4, tab 6) The contracting officer made no reference to rescinding the contract in her decision.

4. By email received by the Board December 31, 2013, appellant appealed the contracting officer's final decision and it was docketed as ASBCA No. 59110. Appellant filed its complaint on January 24, 2014. The government filed its answer on April 4, 2014.

5. Shortly thereafter, by letter dated April 12, 2014, the Head of the Contracting Activity (HCA), Brigadier General (BG) James E. Simpson, found that appellant, acting through its chief executive officer, Mr. Brad Rhoden, had violated section 27(e)(1) (Procurement Integrity Act (PIA)) of the Office of Federal Procurement Policy Act.[1] BG Simpson noted that section 27(e)(1) of PIA criminalizes violations of sections 27(a) and (b) of the Act, when the violations occur "for purpose[s] of obtaining a competitive advantage in the award of a Federal agency procurement." (Gov't mot., ex. G-10)

6. PIA 27(e)(1), P.L. 104-106, Sec. 4304 states:

> Whoever engages in conduct constituting a violation of subsection (a) or (b) for the purpose of either:
>
> (A) exchanging the information covered by such subsection for anything of value, or

---

[1] 41 U.S.C. §§ 2101-2107. Rather than cite to PIA as currently codified we have chosen to use the citation in BG Simpson's memorandum in the record. We find no substantive difference between P.L. 104-106 and PIA as codified when the memorandum was drafted.

(B) obtaining or giving anyone a competitive advantage in the award of a Federal agency procurement contract shall be imprisoned for not more than 5 years or fined as provided under Title 18, United States Code or both.[2]

PIA 27(a) and (b) restrict contractors (27(a)) and government procurement officials (27(b)) from receiving or disclosing any proprietary or source selection information in exchange for money, employment, offer of employment, or other thing of value. PIA 27(a), the section applicable to appellant, states:

During the conduct of any Federal agency procurement of property or services, no competing contractor or any officer, employee, representative, agent, or consultant of any competing contractor shall knowingly-

(1) Make, directly, or indirectly, any offer or promise of future employment or business opportunity to, or engage, directly or indirectly, in any discussion of future employment or business opportunity with, any procurement official of such agency;

(2) Offer, give, or promise to offer or give, directly or indirectly, any money, gratuity, or other thing of value to any procurement official of such agency; or

(3) Solicit or obtain, directly or indirectly, from any officer or employee of such agency, prior to the award of a contract any proprietary or source selection information regarding such procurement.[3]

7. Specifically, BG Simpson asserted that Mr. Rhoden had obtained source selection information, including the government's independent cost estimate and the dollar amount of the lowest cost proposal that had been received by the government, prior to the due date for the offerors' proposals[4] (gov't mot., ex. G-10). This alleged source selection information was conveyed in two emails sent by the government's

---

[2] Codified at 41 U.S.C. § 2102, 2105
[3] Codified at 41 U.S.C. §§ 2102-2104
[4] The documents the government contends conveyed this information have been placed in the record by the government and have not been objected to by appellant.

3

representative, MSG Arcelio Davis, to Mr. Rhoden on April 13, 2011 (R4, tabs 16-18). In one email, MSG Davis sent the estimate as an attachment (R4, tabs 16-17). In the second email, MSG Davis advised, "the lowest so far is [$]2,399,835.54" (R4, tab 18 at 2). BG Simpson also found that "Mr. Rhoden obtained this information for the purpose of obtaining a competitive advantage in the award of the JCIP Courthouse contract . . . ." (gov't mot., ex. G-10). BG Simpson's Determination and Findings include no recommendation or declaration that the contract should be rescinded.

8. Although not cited by BG Simpson or the contracting officer, MSG Davis' second email also stated, "The HVAC system is too small for the building and all the folks that are bidding are making a[sic] adjustments I will let you know the outcome" (R4, tab 18 at 2). Mr. Rhoden responded on April 17:

> Hey quick question for you? In our electrical plan we had to add 8 total Air-CON units, this is due to the size of the bldg. Any less will not sustain the bldg. as requested in the SOW.[5]

(R4, tab 27 at 3) MSG Davis answered, "Yeah that's right we are trying to make some adjustment regarding" (*id*.). To which Mr. Rhoden responded, "[t]hanks because we came up with (8) 24,000 BTUS. . ." (*id*. at 2). MSG Davis replied, "That is about right. According to my cal [sic] I came up with 6 but I was being real cheap. . . . the lowest is at 23.5 right now" (*id*.). The conversation continued with Mr. Rhoden stating, "Thanks . . . but according to our calculations 6 wont [sic] be enough. . ." (R4, tab 28 at 1). MSG Davis replied:

> Yeah I know. Eight is the correct amount but my boss was trying to cut cost [sic]. Stick with the eight. I'm trying to get him on the same page and doing it right.

(*Id*.)

9. The record includes the following abstract of the proposals received by the government:

---

[5] The SOW as it pertains to the HVAC system is in the nature of a design specification requiring an HVAC system capable of maintaining a year round temperature of 70 degrees (R4, tab 1 at 12). The SOW does not specify the number of units to be supplied. Nor does the record include any plans and specifications that may have been provided to the potential offerors, which may have indicated the number of air conditioning units required.

| Offeror | Technical Rating[6] | Price | DBA |
|---|---|---|---|
| CLC Construction Co. | Acceptable | $2,348,424.00 | $33,032.00 |
| Redacted | Failed | $1,749,338.00 | $1,400.00 |
| Redacted | Failed | $1,697,427.00 | $4,800.00 |
| Redacted | Failed | $1,626,124.00 | $6,504.00 |
| Redacted | Failed | $1,494,786.00 | $5,000.00 |
| Redacted | Failed | $1,466,282.00 | $7,900.00 |
| Redacted | Failed | $1,449,412.00 | $3,400.00 |
| Redacted | Not Reviewed | $2,394,115.93 | $14,279.00 |
| Redacted | Failed | $3,020,150.00 | $9,000.00 |
| Redacted | Not Reviewed | $4,950,504.00 | $40,306.00 |

(Gov't mot., ex. G-3 at 1)

10. By letter to the Board dated May 5, 2014, appellant requested more time to respond to the government's submission of the Rule 4 file. Appellant advised that its personnel were scattered overseas and that it needed additional time in which to submit responsive documents. (Bd. corr. ltr. dtd. May 5, 2014) The government interposed no objection to appellant's request by letter dated May 6, 2014 (Bd. corr. ltr. dtd. May 6, 2014). The Board then issued an order, giving appellant until June 9, 2014 to submit its documents (*id.*). Several additional time extensions were requested and granted (*id.*). Appellant finally submitted its supplement to the Rule 4 file in June 2015[7] (*id.*).

11. In a memorandum for appellant dated May 31, 2014, the contracting officer asserted he had reviewed the evidence cited in BG Simpson's memorandum, concurred with the findings, and issued a Notice of Affirmative Government Claim, in which he indicated the government intended to rescind the contract pursuant to FAR 52.203-8,

---

[6] The record indicates that the reason the government found the failed offers unacceptable was due to mobilization and quality assurance/quality control plans being poorly developed (gov't. mot., ex. G-3).

[7] Discussed in greater detail in (SOF ¶ 15).

CANCELLATION, RESCISSION, AND RECOVERY OF FUNDS FOR ILLEGAL OR IMPROPER ACTIVITY, and to seek to recover the $396,327.84 paid to appellant for its performance prior to the termination. The contracting officer gave appellant 60 days to provide any evidence it might have to forestall the government from acting as it advised it intended to. (Gov't mot., ex. G-11)

12. In a final decision dated August 25, 2014, the contracting officer stated appellant had acknowledged receipt of the Notice of Affirmative Government Claim, but had neither disputed the government's contentions, nor provided any evidence or justification to prevent the contracting officer from issuing the final decision. In the final decision the contracting officer rescinded the contract and asserted a government claim against appellant for $396,327.84. The final decision included a demand for payment and the standard appeal rights language informing appellant it had 90 days in which to appeal the decision to this Board. (Gov't mot., ex. G-12)

13. By email dated August 28, 2014, appellant responded to an inquiry from the government advising that the debt had been entered into the government's Contract Debt System. Appellant indicated it would be appealing the contracting officer's decision within 90 days. (Gov't mot., ex. G-16)

14. The Board has no record of appellant ever having filed an appeal from the final decision dated August 25, 2014.[8]

15. In a lengthy document received by the Board on June 8, 2015, entitled "Response to Government's Answer," appellant contests the termination for default, making detailed, specific factual contentions, which dispute the basis for finding that it had violated the PIA. The document was accompanied by two "Letters of Affidavit" and many emails concerning several projects in Afghanistan predating the award of the

---

[8] Appellant, a *pro se* litigant, in its response to the government's motion asserts that it contacted the government's Expeditionary Contracting Cell-Afghanistan after it received the second contracting officer's decision for advice because it lacked the financial ability to retain counsel and was advised that since there was already an appeal taken with respect to the termination for default it was not necessary to file another appeal (app. resp at 1). Although *pro se* litigants are generally afforded a degree of leniency with regard to administrative matters and pleadings, they are not exempt from otherwise complying with legal requirements. *See Elizabeth Construction Company*, ASBCA No. 60723, 17-1 BCA ¶ 36,839 at 179,519; *Environmental Safety Consultants*, ASBCA No. 47498, 00-1 BCA ¶ 30,826 at 152,143. Assuming appellant's contentions are true and that appellant has relied on this advice, it would not excuse appellant's failure to have appealed the contracting officer's decision.

contract for the courthouse that is the subject of this appeal.[9]  From this pleading and the supporting documents accompanying it we distill, summarize and find evidence supporting the following factual assertions:

> a)  The type of information that appellant is accused of receiving improperly was routinely exchanged by the government's engineering representatives and prospective contractors for multiple projects leading up to the award of the courthouse project that is the subject of this appeal;

> b)  None of the documentation at issue that appellant received from the government was marked as being source selection sensitive material; and

> c)  The government regularly solicited cost and pricing information from its prospective contractors for projects it was considering and that the specific cost and pricing information, the government's estimate for the courthouse project that the government contends was improperly received by appellant, may have originated with appellant.

(App. resp. to gov't answer at tabs A at 1, B)

16.  With respect to the government's assertions that it had improperly received proposal price information prior to the award appellant, in part, pleaded:

---

[9] Under Board Rule 13(b) the record may include pleadings as the Board deems is appropriate.  The government and the Board have treated the documents appellant submitted as attachments to its pleading as a supplement to the Rule 4 file and as appellant's response to government discovery requests (s*ee* Bd corr. ltrs. dtd. May 6, 2014; May 8, 2014; June 9, 2014; August 15, 2014; September 10, 2014; September 29, 2014; January 28, 2015; February 4, 2015; February 9, 2015; April 2, 2015; April 22, 2015; May 3, 2015; May 5, 2015; May 6, 2015; June 6, 2015; September 8, 2015; May 22, 2016; May 24, 2016).  This confusion appears to have originated with appellant's conflation of Rule 4 and its response to government discovery requests (*id*.).  The government acknowledged this possibility in its August 15, 2014 objection to documents appellant had submitted in digital form earlier in June 2014 (*id*.).  We find it appropriate in the circumstances of this appeal to include this document and its attachments in the record to be considered in deciding the government's motion.  In accordance with Board Rule 6 (d) the Board accepts these documents as a pleading in this appeal.

> There is absolutely no indication that any of this data is proprietary to any other bidder. In two exchanges on 13 April, MSG Davis refers to price – nowhere does MSG Davis state that these are proposal prices, however. Only the Government response, in *Answer 9*, has added in brackets **"[proposed price]"** – these words do not originate in MSG Davis' email, and the Government is clearly adjusting the record to match their requirements.

(Emphasis in original) Appellant also asserted that it was highly unlikely that any proposal had been received by the government five days prior to the due date for the proposals. (App. resp. to gov't answer at 7 ¶ 3)

17. Appellant also averred that it never paid, offered to pay, or offered employment to MSG Davis (app. resp. to gov't answer, tab A at 2).

PARTIES' POSITIONS

The government contends appellant engaged in illegal conduct, which renders the contract void *ab initio*, thus eliminating the basis for this appeal. It further argues that, because appellant did not appeal the contracting officer's August 25, 2014 final decision, appellant may not challenge this conclusion here, though the government also provides other bases to support the factual findings it believes are sufficient to support summary judgment in its favor. Appellant asserts it has disputed that it engaged in illegal conduct with its appeal of the initial contracting officer's decision.

DISCUSSION

The government's motion first relies on the premise that the appellant has not contested, and is now unable to contest, the finding of the contracting officer that appellant engaged in illicit or improper activity. We find this premise to be false and deny the government's motion as discussed below. We also find that the government has not met its burden of proving uncontested material facts to support a finding of violation of the Procurement Integrity Act or other grounds to set aside the contract.

I. *Standards for Summary Judgment*

Summary judgment requires that there be no material facts in dispute. *Eastern New Mexico University-Roswell*, ASBCA No. 57110, 12-2 BCA ¶ 35,090 at 172,336 (citing *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987)). Material facts are facts that "might affect the outcome of the suit." *Revenge Advanced Composites*, ASBCA No. 57111, 11-1 BCA ¶ 34,698 at 170,883 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)). The movant is

8

responsible for establishing that there are no genuine issues in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Doubts over factual issues are resolved in favor of the opposing party. *Mingus Constructors,* 812 F.2d at 1390. Summary judgment requires that we view the pleadings and evidence in light most favorable to the non- movant and resolve all reasonable inferences in the non-movant's favor. *Dairyland Power Co-op. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994).

*The Appeal Is Reviewable*

The government's contention that failure to timely appeal a contracting officer's final decision renders it unreviewable is correct. Under the Contract Disputes Act (CDA), 41 U.S.C. §§ 7103(g), 7104, a contracting officer's decision becomes "final and conclusive and is not subject to review by any forum, tribunal, or Federal Government agency" unless a contractor appeals the decision to an agency board of contract appeals within 90 days from date of receipt of the decision or brings an action directly on the claim in the United States Court of Federal Claims within 12 months of receipt of the decision. In accordance with the plain language of the CDA, we have held that failure to timely appeal a final contracting officer's decision renders the decision final and conclusive. *RXDC, Inc.*, ASBCA No. 33356, 88-2 BCA ¶ 20,738 at 104,784 (citing *Essex Shirt Company*, ASBCA No. 3278, 57-1 BCA ¶ 1294; *Standard Stevedoring Co.*, ASBCA No. 5171, 59-2 BCA ¶ 2320).[10]

However, the government's argument that appellant's failure to separately appeal the contracting officer's second decision should foreclose its challenge of the contract termination ignores the fact that appellant had submitted an appeal disputing the contracting officer's first decision that it had engaged in illicit or improper activity prior to the contract's award. This was the stated basis for the termination for default, which appellant disputed when it appealed that decision. (SOF) ¶¶ 3, 4, 11-13) The government's second final decision, which appellant failed to appeal, asserts a new claim under a new legal theory, but it is based on facts that are identical to those used to support the decision to terminate the contract for default (SOF ¶¶ 3, 5). These facts appellant has undisputedly expressed its disagreement with by appealing the termination decision. We are unaware of any authority that would support the proposition that appellant is required to formally reiterate its denial of the facts underlying the dispute when the government adds a new legal theory, and the

---

[10] Although *Essex Shirt Company* and *Standard Stevedoring Co.* predate the CDA we have continued to hold them to be valid law because the underlying rationale remains the same whether the requirement for a timely appeal to avoid holding the final decision becoming final and conclusive, arises under the contract's Disputes clause or from the CDA. *Charles G. Williams Constr. Inc.*, ASBCA Nos. 51329, 51637, 99-2 BCA ¶ 30,409 at 150,341.

government has cited none.[11]  We decline to require that facts already denied must be denied again in order to preserve the fact that they are disputed when the government adds a new legal theory by issuing a new contracting officer's final decision.  To do so would exalt form over substance.  The present appeal involves a situation somewhat analogous to pre-CDA appeals where the government would move to dismiss an appeal as being premature because the appellant had failed to submit the claim to the contracting officer for decision, but the Board would retain jurisdiction because the contracting officer's position was known.  *See American Electric Contracting Corp.*, ASBCA No. 18937, 74-1 BCA ¶ 10,609; *Whittaker Corp.*, ASBCA No. 17730, 75-1 BCA ¶ 11,179.  The fact that appellant disputes that it engaged in improper activity, was known to the government  and the dispute was not extinguished by appellant's failure to appeal the government's second decision asserting the new claim.

II. *Even If Undisputed, The Facts Do Not Support Summary Judgment*

The government also argues that appellant's contentions are not sufficient to avoid summary judgment because they are mere unsupported, conclusory allegations, and that appellant has not actually disputed the facts, but instead makes legal arguments regarding their effect (gov't reply at 1-3).  *See Keystone Capital Servs*., ASBCA No. 56565, 09-1 BCA ¶ 34,130 at 168,753 ("Mere arguments, bald assertions or speculation of counsel are insufficient to defeat a motion for summary judgment."); *Applied Cos. v. United States*, 144 F.3d 1470, 1475 (Fed. Cir. 1998) ("It is well settled that a 'conclusory statement on the ultimate issue does not create a genuine issue of fact.'") (internal citation omitted).  The nonmoving party is not required to present its entire case in response to a summary judgment motion to avoid defeat, but it must demonstrate that evidentiary conflicts exist on the record as to material facts at issue. *Armco, Inc. v. Cyclops Corp.*, 791 F.2d 147, 149 (Fed. Cir.1986); *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 835-36 (Fed. Cir. 1984).  A nonmoving party may not simply rest upon vague allegations of disputed facts in opposing summary judgment.  The purpose of summary judgment is "to pierce

---

[11] The government argues our decision in *Military Aircraft Parts*, ASBCA No. 60139, 16-1 BCA ¶ 36,390, supports this proposition.  The facts in *Military Aircraft Parts* are distinguishable from this appeal.  In *Military Aircraft Parts,* the contractor failed to timely appeal a contracting officer's decision terminating the contract for default. *Id.* at 177,424.  Subsequently, after the appeal period had expired, the contractor filed a claim that, although styled as a breach of contract, was essentially a challenge of the termination.  *Id.* at 177,425.  We held in *Military Aircraft Parts* that the contractor was bound by its failure to have timely appealed the termination decision.  *Id.*  As discussed above, appellant timely appealed and thus disputed the facts the government is now arguing cannot be disputed due to its failure to have appealed the government's second final decision.

the pleadings and to assess the proof in order to see whether there is a genuine issue for trial." *Penn Screw & Machine Works, Inc.*, ASBCA No. 32382, 89-3 BCA ¶ 22,205 at 111,694 (internal citations omitted).

We need not determine whether appellant's contentions are mere unsupported conclusory allegations because not only must there be no genuine issue as to any material fact, but the moving party must also be entitled to judgment as a matter of law. *Dongbuk R&U Engineering Co.*, ASBCA No. 58300, 13 BCA ¶ 35,389 at 173,637. In this appeal, the facts relied upon by the government do not support a finding that it is entitled to judgment as a matter of law.

*The Undisputed Evidence Does Not Support Finding The PIA Was Violated*

The contracting officer's decision to rescind the contract relies on the finding made by the HCA, BG Simpson, who based his findings on two specific bits of information appellant is alleged to have received improperly in violation of the PIA; (1) the government's internal cost estimate, and (2) the price of the lowest cost proposal that had been received by the government (SOF ¶¶ 5, 7). If neither of these bits of information fits within the PIA's definition of prohibited procurement information the government would be unable to establish that it is entitled to summary judgment as a matter of law, regardless of whether appellant has properly disputed the facts underlying the contracting officer's decision to rescind the contract.

As is relevant to the circumstances of this case, the PIA prohibits a contractor from knowingly receiving contractor bid, or proposal, or source selection information before the award of a Federal agency procurement contract to which the information relates. 41 U.S.C. § 2102(b). The administrative actions section of the PIA, § 2105(c), permits the government to rescind the contract in two situations: when the contractor, or someone acting in its behalf, has been convicted of an offense punishable under § 2105(a), or, as is more applicable here because there is no evidence that appellant or anyone acting on its behalf has been convicted of violating PIA, when the head of the agency[12] that awarded the contract has determined, based upon a preponderance of the evidence, that the contractor or a person acting for the contractor has engaged in conduct constituting a violation of 27(e)(1) of the Act, i.e., §2102(b). PIA defines "contractor bid or proposal information" as:

---

[12] The statutory text of the PIA refers to the agency head, while FAR 52.203-8 (a)(2)(ii) refers to the "head of the contracting activity," also known as the HCA, which is different. We need not discuss this incongruity because as discussed below we find the record does not support finding the information at issue constitutes prohibited information. Accordingly, in this appeal it does not matter whether the HCA or the head of the agency made the determination.

(A) Cost or pricing data (as defined in section 2306a(h) of title 10 with respect to procurements subject to that section and section 3501(a) of this title with respect to procurements subject to that section).

(B) Indirect costs and direct labor rates.

(C) Proprietary information about manufacturing processes, operations, or techniques marked by the contractor in accordance with applicable law or regulation.

(D) Information marked by the contractor as "contractor bid or proposal information", in accordance with applicable law or regulation.

and "source selection information" as:

(A) Bid prices submitted in response to a Federal agency solicitation for sealed bids, or lists of those bid prices before public bid opening.

(B) Proposed costs or prices submitted in response to a Federal agency solicitation, or lists of those proposed costs or prices.

(C) Source selection plans.

(D) Technical evaluation plans.

(E) Technical evaluations of proposals.

(F) Cost or price evaluations of proposals.

(G) Competitive range determinations that identify proposals that have a reasonable chance of being selected for award of a contract.

(H) Rankings of bids, proposals, or competitors.

(I) Reports and evaluations of source selection panels, boards, or advisory councils.

> (J)  Other information marked as "source selection information" based on a case-by-case determination by the head of the agency, the head's designee, or the contracting officer that its disclosure would jeopardize the integrity or successful completion of the Federal agency procurement to which the information relates.

41 U.S.C. § 2101(2), (7).

A. *Receipt of The Internal Government Cost Estimate Is Not A Violation of The PIA*

Appellant in its response does not dispute that it received the estimate as the government asserts, instead it argues that it did not "knowingly" receive the estimate because it was not marked as source selection information (app. resp. at 2). This argument reiterates appellant's contentions made previously in its pleading (SOF ¶ 15). This argument alone is insufficient to carry the day for appellant. The Supreme Court has ruled that "knowingly" when used in the criminal context does not require knowledge of the law alleged to have been violated, only knowledge of the facts constituting the offense. *Bryan v. United States*, 524 U.S. 184, 193 (1998) (citing *United States v. Bailey*, 444 U.S. 394, 408 (1980)). Accordingly, all that is needed to meet the knowingly requirement set forth in the PIA is evidence that appellant understood the information was received, so long as the information is of a type that is prohibited by the PIA. Here, appellant acknowledges receipt of both the estimate and what the government asserts was the lowest proposal price it had received (SOF ¶¶ 15-16). Despite appellant's contentions that it did not knowingly receive it because it was not marked, or that appellant did not know it was impermissible for it to have the information, or that it was not clear to appellant that the price conveyed was another offeror's, there is no dispute in the record before us regarding whether appellant knowingly received the information at issue. Appellant's arguments go to whether it knew, or should have known it was violating the law, not to whether it had received the information. Appellant's contentions do nothing to dispute the allegation that it had knowledge of the facts constituting the offense.

We next consider whether the estimate fits within the prohibited categories of information that should not be received. We find the estimate does not fit within the definition of "source selection information" set forth in PIA, because the plain language of the statutory text of § 2107(a) of the PIA, which includes express definitions of "source selection information" does not include the government estimate.[13] This very issue was addressed by the district court in *United States*

---

[13] Whether CLC was otherwise prohibited from receiving the government estimate is a different question which we do not opine upon.

*v. Bowling*, 108 F. Supp. 3d 343, 348 (E.D.N.C. 2015), which (though not binding on us) persuasively came to the same conclusion. Therefore, even though there is no dispute appellant received this information, it was not a violation of PIA to have it and the government is not entitled to judgment as a matter of law on that ground. Nor does the government estimate constitute "contractor bid or proposal information" because it was not submitted to a federal agency as part of, or in connection with, a bid or proposal to enter into a federal agency procurement contract. *See* 41 U.S.C. § 2101(2).

B. *The Proffered Evidence Does Not Support A Finding That CLC Received Proposal Price Information*

The entirety of the evidence proffered by the government in support of its allegation that appellant improperly received proposal price information in violation of the PIA is a single, cryptic statement in an email MSG Davis sent to appellant on April 13, 2011, five days before the proposals were due (SOF ¶ 7). Appellant has disputed this is proposal price information. In its "Response to Government Answer" pleading, appellant notes that there is nothing expressly stating that this cryptic statement is a reference to a proposal price. While the context of the email message is such that we might dismiss appellant's contentions in this regard as being mere unsupported argument, the record includes additional evidence supporting appellant's contention. The government included an abstract of the proposal prices it had received in the record (SOF ¶ 9). None of the prices listed in the abstract match the price transmitted in the email message from MSG Davis to appellant. This raises a question of fact as to whether MSG Davis was referring to another proposer's price as the government contends, or something else. Because we cannot resolve this question on the basis of the evidence before us, we may not grant the government summary judgment on this basis.

C. *The Evidence Regarding The Other Prohibited Information Allegation Does Not Support Summary Judgment*

Although not cited in the HCA's factual findings the contracting officer relied on for his/her final decision, the government also argues that appellant received source selection information related to the government's technical evaluation (gov't mot. at 20).[14] The government cites to several email chains attached to its motion as exhibits and asserts that the most blatant example is an email in which MSG Davis informed appellant that it was initially disqualified, but that he had been able to convince the technical team to give appellant an "acceptable" rating.[15] We do not

---

[14] We make no ruling regarding whether grounds not subject to a finding by the head of the agency or the HCA can be relied upon to cancel or rescind a contract.

[15] The basis for the initial disqualification of appellant's proposal appears to have been that it was viewed as exceeding the 50-page limit set forth in the solicitation.

agree with the government that this "blatant" example or the other emails cited, constitute prohibited information under PIA. Although not articulated by the government in its motion, the government is presumably viewing these emails as "source selection information" pursuant to § 2101(7)(D), (E), (H), or (J), which include technical evaluation plans, technical evaluations of proposals, rankings of bids, proposals, or competitors, and "[o]ther information marked as 'source selection information' based on a case-by-case determination by the head of the agency, the head's designee, or the contracting officer that its disclosure would jeopardize the integrity, or successful completion", of the procurement to which the information relates. The information that the evaluation team had changed its initial evaluation of appellant's proposal from unacceptable to acceptable is neither a technical evaluation plan, nor the technical evaluation of the proposals. It is only a reference to the rating assigned to the proposal after the evaluation of appellant's proposal had occurred. Revealing only the rating, without more, appears to have conferred no competitive advantage to appellant and the government has failed to provide any evidence that receiving this information was advantageous to appellant in any way. The evaluation can only occur after the proposals have been submitted and there is no evidence in the record before us that there was any opportunity to revise the proposals after they had been submitted. Nor does it constitute rankings of bids, proposals or competitors, which would require that other bids, proposals or competitors' ratings be disclosed, so that appellant's relative position would also be known. Additionally, the record indicates that none of the email relied upon by the government was denoted as "source selection information", and there is no evidence that the head of the agency, his or her designee, or the contracting officer has determined that the disclosure of these emails would jeopardize the integrity or successful completion of the procurement.

These emails also include a discussion of the number of air conditioning units required, which the government may be relying on in its argument without expressly stating so (SOF ¶ 8). The record is insufficiently clear at this time for us to determine whether the exchange of this information constitutes a violation of the PIA. We note this information does not constitute a technical evaluation plan, a technical evaluation of a proposal, ranking of bids, or competitors, and is not marked as "source selection information." Nor can we say that the record undisputedly establishes that the disclosure of this information jeopardized the integrity of the procurement that it relates to. First, the emails suggest that the information may have been shared with the other offerors. Additionally, appellant has asserted that this type of information was regularly shared between the government and offerors for the types of projects it bid on and provided examples of same (SOF ¶ 15; app. resp. to gov't answer, tab B).

---

The cited email chain indicates that when the attachments to the proposal were not included, the proposal did not exceed the page limitation. (R4, tabs 32-33)

Finally, in order to constitute an offense under the PIA, which would permit the government to rescind the contract, the information received would have to have been in exchange for payment, an offer of employment, or to gain a competitive advantage. 41 U.S.C. §§ 2104(d)(2), 2105(c)(1)(B)(ii). There is no allegation, much less any evidence, that appellant paid for, or made an offer of future employment, for this information. The only evidence in the record in this regard is that appellant made no payments or offers of employment (SOF ¶ 17). Many issues of fact remain for which there is no evidence in the record, to determine whether appellant received any competitive advantage from the receipt of this potentially "other prohibited information."

Even had we found the government's argument that MSG Davis's messages constitute impermissible source selection information under § 2102(7)(D) or (E), (H), or (J) of PIA compelling, the government would not be entitled to summary judgment as a matter of law because, as noted previously, the implementing regulations require that the HCA, BG Simpson, recommend that the agency head determine that the contractor has engaged in conduct constituting an offense punishable under the PIA for the purpose of voiding or rescinding the contract. FAR 3.104-7(b)(5). There is no evidence in the record that this has occurred.

III. *The Government's Alternative Argument Is Also Unpersuasive*

The government argues in the alternative the contract is void *ab initio* as matter of law, and that it is entitled to summary judgment because there is no genuine issue of fact that appellant violated the PIA (gov't. mot. at 16-20). As discussed above, we find the record does not undisputedly establish that appellant obtained source selection information as that term is defined in the PIA. The government argues appellant improperly obtained source selection information as defined in FAR 2.101 (gov't. mot. at 18). The FAR definition of source selection information essentially mirrors the definition found in the PIA at 41 U.S.C. § 2101(7). We find there is no material difference in how the term is defined in the PIA and the FAR. Accordingly, we find the government's argument that the record undisputedly violated the PIA and the FAR's prohibitions against receiving source selection information unpersuasive.

## CONCLUSION

For all of the foregoing reasons the government's motion is denied.

Dated: April 15, 2020

CHRISTOPHER M. MCNULTY
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 59110, Appeal of CLC Construction Company, rendered in conformance with the Board's Charter.

Dated: April 17, 2020

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals